GRIFFITH v. THE STATE.

1. CRIMINAL PRACTICE: *Amending at the trial, examination before committing court. Impeaching deceased witness.*

When, in the trial of a criminal case in the Circuit Court, the written examination of a witness before the committing court (who has since died) is read as evidence against the accused, he may impeach the evidence by proof of previous contradictory statements made by the witness, provided that he was interrogated, in the examining court, of such contradictory statements, with a proper specification of the time and place they were made; and if the written examination fails to show that such foundation was laid for impeaching the witness, the committing magistrate may amend it, to show the fact.

APPEAL from *Little River* Circuit Court.
Hon. H. B. STUART, Circuit Judge.

*Hon. C. B. Moore, Attorney General,* for the State:

The testimony of Lee was of no very material weight or effect, and, if the whole of it had been stricken out, there was sufficient evidence to sustain the verdict.

The Court properly refused to allow the committing magistrate to amend the minutes of his examination.

ENGLISH, C. J. Appellant, Linsey Griffith, was indicted, at the March term, 1881, of the Circuit Court of Little River county, for larceny, the indictment charging, in substance, that, on the seventeenth of November, 1880, he stole a coat of the value of $8, the property of B. F. Love. The jury found him guilty and fixed his punishment at imprisonment in the penitentiary for one year. He moved for a new trial, on the grounds that the court excluded evidence offered by him, etc., and for misconduct of the jury, and the motion was overruled.

The State proved that the coat belonged to B. F. Love, and that about the seventeenth of November, 1880, it was taken from a shed room of the house of Mrs. Hendricks, in the suburbs of Richmond, where Love had left it. Appellant having been seen with the coat on, at a party, Love obtained a search warrant, and went, with a deputy sheriff, to the house of Dan Griffith, the father of appellant, where he was arrested, and the coat found in a box, under a bed. Appellant stated to Love and the deputy sheriff (as he had to his father) that he found the coat by a log, between the houses of Mrs. Hendricks and his father. To another witness he stated that he bought the coat in Texarkana, and, to another, that he purchased it of a Mr. Mims.

He was arrested on the twenty-fifth of November, 1880, and, it appears, taken before N. J. Cook, a Justice of the Peace, whose certificate of examination bears date on the twenty-ninth of the same month.

It appears, from the certificate, that among the witnesses examined for the State, was one Robert Lee, who was sworn, examined in the presence of appellant and his counsel, his testimony reduced to writing and signed by him.

During the trial in the Circuit Court, the State proved that Robert Lee had died, and read in evidence, without objection, his testimony as taken and certified by the committing magistrate, as follows:

"I am fifteen years old, and live in Little River county, etc. I know Linsey Griffith, the defendant. I saw him with the coat on, the night of the party at the court house. (Here witness was shown the coat, and recognized it as being the coat defendant had on at the party.) I told defendant it was Mr. Love's coat. He told me he found it, Sunday before last.

"I was cutting wood at Mrs. Hendricks' gate. Defendant came to me, and told me to give him something to eat.

I told him the victuals belonged to my mother, and to go into the house, and Mrs. Hendricks would give him something. Defendant told me he did not want to go in the yard. I then picked up a turn of wood, and carried it in the kitchen, in the back part of the yard. Defendant followed into the yard. I don't know where he went; but when I came back into the front yard he was gone. I am not positive that it was last Sunday, a week ago, that defendant went into Mrs. Hendricks' yard.

"Defendant told me Lawrence Griffith had just turned off from him when he found the coat."

### CROSS—EXAMINATION.

"I live about two hundred and fifty yards from Mrs. Hendricks'. I am at Mrs. Hendricks' every night, chopping wood, sometimes. There was a side room to Mrs. Hendricks' house; only one door to it; I don't know whether it locks.

"I did not, in the presence of Dan. Griffith, Cas. Griffith, John Trammell, or any one of them, or any other person, have a quarrel or dispute with the defendant, or claim the coat in dispute, and want him to give it up to me; nor did I say it was my coat, and that I left it where defendant found it; nor did I want Dan. Griffith to make him give it up to me. I saw this coat at Mrs. Hendricks', last Saturday was three weeks ago; it was hanging in Mrs. Hendricks' big room, on a nail; I never saw it at Mrs. Hendricks' at any other time. I never saw Mr. Love with the coat on but once in my life. It was at the time we moved up to where we now live, which was about six weeks ago, that I saw Mr. Love with the coat on, at Mrs. Hendricks'. I did not take the coat off the nail in Mrs. Hendricks' big room, and hide it out where the defendant found it."

1.   After the State had read, in evidence, the above tes-

timony of Robert Lee, as reduced to writing, and returned by the committing magistrate, appellant offered to prove by Dan. Griffith that at the court-house in Richmond, at the party, on the night before appellant was arrested, Robert Lee had a difficulty with appellant about the coat, and claimed it as his own, and said he had put the coat where appellant had found it, by the old log, and had asked witness to make appellant deliver the coat to him.

And appellant offered to prove the same by Cas. Griffith and John Trammell.

The State objected to the introduction of the proposed evidence, because the foundation as to time and place was not sufficiently laid. The court sustained the objection, excluded the evidence, and appellant excepted.

Appellant then offered to prove by two of the above witnesses, John Trammell and Cas. Griffith, that on the streets of Richmond, on the same night of the party at the court-house, on the evening before appellant was arrested, Robert Lee had a conversation about the coat with appellant; that Lee claimed the coat; wanted appellant to give it to him, and said he had left it where appellant had found it.

Which the court ruled out, on the ground that the foundation as to time and place had not been sufficiently laid, and appellant excepted.

2.   Then, for the purpose of laying the foundation to impeach Robert Lee, appellant offered to prove by W. F. Joyner (one of the appellant's counsel), and others, that Robert Lee, before the examining court, was asked whether at the court-house, at the party, in Richmond, on the night before appellant was arrested, he and appellant were engaged in a quarrel about the coat, in the presence of Dan. Griffith, Cas. Griffith, John Trammell and others, and whether he, Lee, did not then and there claim the coat, and say that he left the coat where appellant found it, and

whether he did ask Dan. Griffith to make appellant deliver the coat to him.

Which the court ruled out, and appellant excepted.

Appellant then, for the purpose of laying the foundation to impeach Robert Lee, offered to prove by W. F. Joyner, and others, that on the examination of said Lee before the examining court, he was asked whether, in the streets of Richmond, on the night of the party at the court-house, on the evening before appellant was arrested, in the presence of Cas. Griffith, John Trammell and others, he had a quarrel with appellant about the coat, and then and there said that the coat belonged to him, Lee, and that he left it where appellant found it, and wanted appellant to give it up to him.

Which the court ruled out, and appellant excepted.

3.   Appellant then, for the purpose of laying the foundation for the impeachment of Robert Lee, proposed to have the transcript and minutes of the examining court amended by N. J. Cook, the Justice of the Peace who examined said cause and witness, so as to show that, on said examination, said witness, Robert Lee, was asked whether, at the party at the court-house, on the night of said party, he had a difficulty about the coat with appellant, in the presence of Dan. Griffith, Cas. Griffith, John Trammell and others, and whether, in the presence of said parties, the witness had claimed said coat, and said he had left it where appellant found it, and asked Dan. Griffith to make appellant give the coat to him.

At the time this motion was made the examining Justice was in court.

The court overruled the motion, and appellant excepted.

The above rulings of the court, the bill of exceptions shows, were made grounds of the motion for a new trial.

I.   The rule is well established in England, and by the

current of adjudications in the United States, that a witness cannot be impeached by showing that he had made contradictory statements from those sworn to, unless, on his examination, he was asked whether he had not made such statements (specifying time and place) to the individuals by whom the proof was expected to be given. See *Conrad* v. *Griffey*, 16 *Howard, U. S.*, 46, and cases cited; *Unis et al* v. *Charlton's Adm'r. et al*, 12 *Grattan*, 484, and cases cited.

The rule has been repeatedly recognized by the decisions of this court. *Beebe* v. *DeBaun*, 8 *Ark.*, 511; *Yoes* v. *State*, 9 *Ib.*, 42; *Drennan* v. *Lindsay*, 15 *Ib.*, 359; *Atkins* v. *State*, 16 *Ib.*, 569. And has been formulated and adopted by statute. *Gantt's Dig.*, secs. 2524-5-6.

In *Conrad* v. *Griffey, sup.*, JUSTICE McLEAN said: "The rule is founded upon common sense, and is essential to protect the character of a witness. His memory is refreshed by the necessary inquiries, which enables him to explain the statements referred to, and show they were made under a mistake, or that there was no discrepancy between them and his testimony."

And JUSTICE DANIEL, in *Unis, et al.*, v. *Charlton's adr.*, et al., sup., concurred with Mr. Greenleaf, "that the rule proceeds from a sense of justice to the witness; for, as the direct tendency of the evidence is to impeach his veracity, common justice requires that by first calling his attention to the subject, he should have an opportunity to recollect the fact, and, if necessary, to correct the statement already given, as well as, by a re-examination, to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said."

"These reasons," said the same learned Judge, "it is obvious, apply just as forcibly to depositions as to oral examinations in court. And, indeed, there are considerations

which urge the application of the rule to the case of an im-- peachment of a witness who has given his testimony in the form of a deposition, which may not arise in an effort to discredit a witness who has been examined in court. In the latter case the witness usually remains in or about the court till the trial is concluded ; and, if an assault is made upon him by proof of inconsistent statements, he might, even before the adoption of the rule requiring him to be first examined as to such statements, be recalled and re-examined by the party in whose favor he had testified ; and he may thus have an opportunity of repelling, or explaining away, the force of the assault ; whereas the witness whose deposition has been taken is usually absent from the scene of the trial, and has no shield against attacks on his veracity, other than that provided by the rule."

In *Conrad* v. *Griffey*, *sup.*, an effort was made to discredit a witness, who had given a deposition under a commission, by proof of antecedent contradictory statements ; and the court were unanimous in the opinion, that as the witness had not been interrogated as to those statements when he was examined, the proof was not admissible. And the court quoted, with approbation, the opinion of the Supreme Court of New York, in the case of *Kimball* v. *Davis*, 19 *Wend.*, 437 (affirmed in the Court of Errors, 25 *Wendell*, 259), holding, that where the imputed contradictory statements are alleged to have been made since the taking of the deposition, the adverse party can avail himself of such statements only by taking out a second commission.

And the rule has been held applicable to depositions as well as to oral examinations of witnesses in court, in a number of other cases. *Matthews et al.* v. *Dare et al.*, 20 *Maryland*, 269 ; *Gregory* v. *Cheatham et al.*, 36 *Mo.*, 161 ; *Story et al.* v. *Saunders et ux.*, 8 *Humphries*, 663 ; *Richmond* v.

*Richmond*, 10 *Yerger*, 347 ; *Howell* v. *Reynolds*, 12 *Ala.*, 129 ; *Sawyer v. Sawyer*, *Walk. Ch. R.*. 48.

In *Runyan* v. *Price et al.*, 15 *Ohio State*, 1, the deposition of a subscribing witness was taken, in probating a will, and afterwards, in a suit to contest the validity of the will, the witness in the meantime having died, an attempt was made to impeach his testimony by proof of antecedent contradictory statements as to the sanity of the testator, and the court, on full review of the authorities, held that it was inadmissible, no foundation for it having been laid. by examination of the witness before his death.

And, on the authority of that case, it was held, in *Wroe* v. *State*, 20 *Ohio State*, 472, when the dying declarations of the person slain were introduced in evidence, by the State, that the accused could not be permitted to impeach him by proof of antecedent contradictory declarations.

In this case the deceased witness, Robert Lee, testified, on cross-examination before the examining magistrate, that he did not, in the presence of Dan. Griffith, Cas. Griffith, John Trammel, or any one of them, or any other person, have a quarrel or dispute with appellant, or claim the coat. in dispute, or want appellant to give it up to him, or say that it was his coat and that he left it where appellant found it, nor want Dan. Griffith to make appellant give it up to him.

It is probable that these denials were made by the witness in response to interrogatories put to him on behalf of appellant, with a view to his impeachment, and that the examining magistrate omitted to reduce the interrogatories to writing.

The court ruled out the impeachment evidence offered on the trial, because it did not appear from the statement of the deceased witness, made on cross-examination, as reduced to writing by the magistrate, that his attention had.

been directed to the time and place of the antecedent contradictory declarations, This may or may not have been so, and though strictly the ruling of the court was right, it might have been safer, in a case involving liberty, to give the accused the benefit of the doubt.

II. In *Irving* v. *State*, 9 *Texas Court of Appeals*, 66, after laying the proper predicate, the State introduced the testimony of a witness, taken before and reduced to writing by the committing magistrate; and then was allowed to supplement that testimony by oral proof of additional statements deposed to by the witness, before the examining magistrate, and not reduced to writing, which was held by the Court of Appeals to be an error, and ground of reversal.

In this case appellant did not offer to prove any statement of the deceased witness, Robert Lee, not reduced to writing by the examining magistrate, but proposed to prove by several witnesses that, by interrogatories propounded to him on his examination before the magistrate, and which he had omitted to put down in writing, the attention of the witness had been properly directed to time and place of antecedent contradictory statements, as a foundation for his impeachment.

The proposed evidence, if admitted, would have been for the court, and not for the jury, and after hearing the statements of the witnessess, and ascertaining whether they were present at the examination of the deceased witness, and heard the interrogatories put to him, and judging of their intelligence, the accuracy of their memories, etc., the court might then have determined whether the foundation for the impeachment of the witness had been properly laid.

III. But the committing magistrate himself being present in court, the better practice would have been to permit him to amend his return, under the supervision of the

court, by putting in writing the interrogatories propounded.
to the deceased witness, on his · cross-examination, or the·
substance of them. We can see no good reason why that
might not have been permitted by the court.

As the judgment must be reversed, for the error last·
above indicated, and the cause remanded for a new trial, it
is not necessary to inquire whether appellant was preju-
diced by misconduct of the jury.