WILLIS vs UNITED STATES.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 147).

1. *Criminal Law—Change of Venue—Power of Court—Presumptions.*

Section 7, of the Act of Congress of March 1, 1905, (28 Stat. p 697, c. 145), provides that all prosecutions for crimes or offences within the jurisdiction of the United States in Indian Territory, shall be had in the jurisdiction in which the offense was committed, and in the court nearest or most convenient to the locality where it was comitted to be determined by the judge on motion to transfer. It is further provided that when a change of venue is allowed, the court shall change the venue to the nearest place of holding court within the district. *Held;* A fair construction of said statute leaves the judge to determine, on motion, the place to which the cause shall be transferred, and this applies to a motion to change the venue as well as transfer. Unless the contrary appears the Appellate Court must assume that the Trial Court followed the statute in changing the place of venue.

2. *Same—Confession—Which is Best Evidence of.*

The statement of the prisoner upon preliminary examination before a magistrate, though under oath and taken down is secondary evidence. The statute only requires this magistrate to make in writing a "general" statement of the substance of what was proven. Therefore the testimony of the witnesses who heard it is admissable. Such testimony is more satisfactory than that of the statement made by the magistrate.

3. *Evidence—Idem Sonans—Indictment and Proof.*

The indictment charged defendant with the murder of one "Sarah Roberts" while the proof showed the correct name of the deceased to be "Sarah Robert." *Held;* The rule of idem sonans should prevail.

4. *Criminal Law—Evidence—Instruction to Jury.*

> The jury was instructed that if the testimony of witnesses showed the defendant to be sixteen or seventeen years of age; that is, if the jury was satisfied from the evidence, from his appearance, and the testimony on that point, there would be nothing further to consider in regard to his age; and that if, upon the other hand, the testimony showed to the satisfaction of the jury that the appellant, at the time of the commission of the crime, was under the age of fourteen years, then it would be the duty of the jury to determine from the evidence that he was of sufficient intelligence to know right from wrong, and that upon that question what the witness stated as to his intelligence and how he acted, and, if the jury should find that he participated in the crime, the question would then be whether he kept it a secret, whether he left the neighborhood, or any proof that would show whether he knew right from wrong; but the question of his knowledge, of his knowing right from wrong, does not enter into the case, if the jury should find from the evidence in the case that he was between fifteen and sixteen, or over the age of fourteen, at the time of the commission of the alleged crime. A previous instruction clearly set forth that the defendant was presumed to be innocent, and that he should not be found guilty except upon evidence that should satisfy the jury beyond reasonable doubt. *Held:* No error.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice T. C. Humphry, Nov. 18, 1904.

Assias Willis was convicted of murder in the first degree, and he appeals. Affirmed.

*J. E. Whitehead*, for appellant.

*J. H. Wilkins*, U. S. Attorney.

LAWRENCE, J. The appellant was indicted December 17, 1903, for the murder of Sarah Roberts on the 4th day of

September 1903, in the Central district of the Indian Territory April 20, 1904, on motion of the prisoner, the cause was taken on change of venue to Durant, in said Central district. November 18, 1904, in said court at Durant, appellant moved to have the cause stricken from the docket. The motion was overruled. Appellant was tried, convicted, and sentenced to the penitentiary for his natural life.

Appellant assigns the following errors: First, the court erred in sending the case to Durant upon change of venue from Antlers, when Atoka was the nearest place of holding court to Antlers. Second, the court erred in permitting witnesses, John Garland, Robert E. Taylor, Elam Ward, and J. A. Spaulding, to testify as to the confession made to them by appellant, on the ground that appellant was put upon oath; also as his statements were reduced to writing, the writing was the best evidence. Third, the court erred in overruling appellant's motion for peremptory instructions. Fourth, the court erred in bringing in the jury, after they had retired to consider their verdict, and giving them a charge as set forth on page 81 of the record. It appears from the testimony contained in the transcript of the record in this case that Sarah Roberts, the person alleged to have been murdered, a girl 12 years old, lived with her aunt, Sophia McAfee, 5 miles from the town of Garland, I. T. On the 1st day of September, 1903, the aunt went to the town of Garland to receive some money coming to her. On that day she received $100 at a store in the town, and it was paid to her in the presence of this appellant and one Moses James. There was $400 more coming to her from the same party, and she returned for it on the 4th of September, 1903, leaving at her house the said Sarah Roberts. Upon her return in the evening Sarah was not there, the furniture and bedding in the house was scattered about, and the trunk had been opened. A search was made for the girl the next day,

but she could not be found. The $100 in money that had been received on the 1st of September had been hidden in an outhouse, and was not disturbed. The appellant and Moses James, who lived in the neighborhood, disappeared soon after the disappearance of the girl, Sarah. A month afterwards the appellant returned to the neighborhood and went to the house of John Garland, where he had formerly made his home for awhile, and soon after his return he accompanied Garland to Sophia McAfee's house, where there was an assemblage of people for the purpose of making a search for the missing girl, Sarah. When there the United States commissioner who was present, asked the appellant if he could take them to the place where the girl was murdered, and he said he believed he could. No threats were made and no inducements held out to him, and at his own free will he stated to the United States commissioner that he and Moses James went to the house of Sophia McAfee to get some money; that James stopped and looked about the place while the girl, Sarah, was in the house; that James went in and took her out 30 or 40 yards from the gate, while the appellant remained upon the porch; that James hit her on the head two or three times, and then laid her down, and returned to the house and got a hatchet and broke open the trunk, and then took a piece of rope from the well and put it around the waist of the girl and dragged her 300 or 400 yards, and took her hands and led her over to the place where he killed her; that before he killed her the girl said "I didn't know I was going to be treated this way;" that at that time James took the gun from appellant and knocked the girl down with it, put his foot on her face, put his knife in her neck, and cut it off and then cut the clothing off the body, and put it beside of a log. This statement was made in the presence of a number of persons. A search was made at that time, and nothing but the bones or skeleton was found, and its identity was established by ample proof. Subsequently

the appellant made a statement before the United States commissioner at the preliminary hearing, which was reduced to writing and signed by the appellant. There was some conflict of evidence as to the exact age of the appellant at the time the crime was committed. No witness was able to testify directly and positively as to his age; some stating it from 15 to 17 years of age. The appellant himself went upon the witness stand and stated that he was then 15 years old or, rather, would be 15 the coming March, 1905, which would make him between 13 and 14 at the time the crime was committed. Elam Ward, a witness, testified that the boy had lived with him one fall, and that he was a smart boy and knew right from wrong; that he didn't know how old appellant was, but would guess about 14 or 15 years old.

It is insisted by counsel for appellant that the court erred in changing the venue from Antlers to Durant, and he cites section 51 of Carter's I. T. St. 1899, in support of the contention. This statute, which is section 7 of an act of Congress approved March 1, 1905, and found in 28 Stat. p. 697, c. 145, provides that: "All prosecutions for crime, or offenses of which the United States Court in Indian Territory shall have jurisdiction, shall be had within the district in which said offense shall have been committed, and in the court nearest or most convenient to the locality where it is committed, to be determined by the judge on motion to transfer the trial of the case from one court to another." It is further provided in the same section that: "All cases shall be tried in the court to which the process is returnable unless a change of venue is allowed, in which case the court shall change the venue to the nearest place of holding court within the district." A fair construction of this statute leaves the judge to determine, on motion, the place to which the cause shall be transferred,

and this applies to a motion to change the venue as well as upon a motion to transfer. Moreover, we are not aware of any rule that requires this court to take judicial notice that Atoka was the nearest place of holding court to Antlers. Unless it clearly appears otherwise, this court must assume that the trial court followed the statute in changing the place of venue. Therefore the first assignment of error is considered not well taken.

The second assignment of error is that the court permitted witnesses to testify to the confession made by appellant when appellant was put upon oath, and his statements reduced to writing, and it is based upon the ground that the writing is the best evidence. The statement of the prisoner upon preliminary examination before a magistrate, though under oath, and taken down, is secondary evidence. The statute only requires the magistrate to make in writing a "general" statement of the substance of what was proven, and to file the same with the proceedings. Therefore, it must be clear that this statement could not be so satisfactory as a full statement of all that was said, proven by witnesses who were present and heard it. Section 1374, Carter's I. T. St.; Shackelford vs State, 33 Ark. 539; Dolan vs State, 40 Ark. 554; Griffith vs State, 37 Ark. 324.

The third assignment is that the court erred in overruling appellant's motion for peremptory instructions. The instruction asked is in the following language: "That the jury be instructed to return a verdict of not guilty for the reason that the defendant is charged in the indictment with having murdered one 'Sarah Roberts' while the proof shows the correct name of said deceased, if she be dead, to be 'Sarah Robert;' and for the further reason that the defendant is shown to have been an infant between the ages of 12 and 14 years, and is

therefore not capable of committing a crime." The instruction assumes that the name of the person murdered was proved, without any controverting proof, to be "Sarah Robert." An examination of the evidence in the case does not make this perfectly clear. The aunt, with whom she lived, Mrs. McAfee, states it both ways, Roberts and Robert. It is further assumed that they are distinct and different names, Sarah Roberts and Sarah Robert; in other words, that they are not idem sonans. There is no absolute rule laid down as to what names are idem sonans. Courts do not entirely harmonize on this question. A number of examples are cited from cases in appellant's brief, some in which the courts have held names to be idem sonans, and some in which they have held otherwise; but no name has been shown like the one in this case. One example may be given which does not appear in the brief—that of Robinson and Robertson as idem sonans (13 Mo. 82, s. c. 53 Am. Dec. 137). Another, Bondette and Burdette (Aaron vs State, 37 Ala. 106); Fain and Fanes (State vs Hare, 95 N. C. 682). Courts do not hold strictly when there is difficulty in determining whether the names have the same sound. 1 Bishop, Cr. Proc. 688. Therefore, in this case, we think, the rule of idem sonans should prevail. The matter as to age was one in which the evidence conflicted, and therefore was a matter of fact to be determined by the jury under proper instruction given by the court. We think the court committed no error in overruling the motion to return a verdict of not guilty.

The fourth assignment of error is in the action of the court in bringing the jury into court the day after it had retired to consider of its verdict, and giving the charge set forth on page 81 of the record. It appears that no exception was taken to this charge of the court. However, we have carefully read and considered it, and think the court did not commit an error in instructing the jury with reference to the matter of the age of

the appellant at the time of the commission of the alleged offense. The jury was instructed that if the testimony of the witnesses showed the defendant to be 16 or 17 years of age; that is, if the jury was satisfied from the evidence, from his appearance, and the testimony on that point, there would be nothing further to consider in regard to his age; and that if, upon the other hand, the testimony showed to the satisfaction of the jury that the appellant, at the time of the commission of the crime, was under the age of 14 years, then it would be the duty of the jury to determine from the evidence that he was of sufficient intelligence to know right from wrong, and that, upon that question, they should take into consideration what the witnesses stated as to his intelligence, how he appeared as to his intelligence, and how he acted, and, if the jury should find that he participated in the crime, the question would then be whether he kept this a secret. whether he left the neighborhood, or any other proof that would show whether he knew right from wrong; but the question of his knowledge, of his knowing right from wrong, does not enter into the case, if the jury should find from the testimony that he was between 15 and 16, or over the age of 14, at the time of the commission of the alleged offense.

A previous instruction of the court to the jury clearly set forth that the defendant was presumed to be innocent, and that he should not be found guilty of the charge except upon evidence that should satisfy the jury beyond a reasonable doubt, and the court therein defined what constituted reasonable doubt, in conformity to the rule of law.

Upon a careful consideration of all the testimony in the case, and the bearing of the law thereon, we do not find anything in this record to authorize this court to set aside the judgment of the court below, and therefore the same is affirmed.

GILL, C. J., and CLAYTON and TOWNSEND, JJ., concur.