JOHN MASONE, an Infant, by His Natural Parent and Guardian, THOMAS MASONE, et al., Appellants, v ROSARIO GIANOTTI et al., Respondents.

Second Department, November 15, 1976

*Pliskin, Rubano & Baum (Joseph A. Baum* of counsel), for appellants.

*Raymond J. MacDonnell (Philip Hoffer* of counsel; *Rose L. Hoffer* and *Peter T. Affatato* on the brief), for respondents.

SHAPIRO, J. In a negligence action by an infant, John Masone, to recover damages for personal injuries, and by his natural parent and guardian, Thomas Masone, individually, for medical, hospital and surgical expenses incurred by him for the care of the infant plaintiff, and for loss of the infant's services, plaintiffs appeal from a judgment of the Supreme Court, Queens County, entered August 21, 1975, upon a jury verdict in favor of the defendants. We reverse and order a new trial.

### THE ISSUES

The issues are (1) whether the trial court committed preju-

dicial error when it refused to instruct the jury, as requested by the plaintiffs, (a) that parents may be responsible for negligent failure to exercise reasonable care in entrusting and leaving a dangerous instrumentality, a "BB gun", in the possession of their 12-year-old infant son, with which gun the infant plaintiff was seriously injured and, (b) that violation by the infant defendant and his codefendants, his parents, of sections 265.05 and 265.10 of the Penal Law, which declare, respectively, that possession of such a gun by an infant under the age of 16 years constitutes juvenile delinquency and that the giving of such a gun to a person less than 16 years of age is a class A misdemeanor, is evidence of negligence on the part of the owner and giver of such a gun if such possession of the gun was the proximate cause of the injury to the plaintiff, and (2) whether the trial court's charge on contributory negligence was correct.

There is also the question whether it was reversible error for the trial court to permit the defendants' attorney to inform the jury on summation that the defendants were insured and that their defense was being presented by the insurer.

### THE FACTS

The one-year-old infant plaintiff, John Masone, was struck in the right eye by a shot fired from a "BB gun" by his three and one-half-year-old brother, Thomas Masone. This occurred at about 8:00 A.M. on November 28, 1969 when both children were in the living room of their grandparents' home. Both grandparents, the adult defendants, Rosario and Frances Gianotti, were then in the kitchen, having breakfast with the children's mother. The infant defendant, Frank Gianotti, was in his room at the time, sleeping.

At about 8:00 A.M. the occupants of the kitchen heard a "puff sort of noise" and then heard something hit the kitchen wall. They then saw Tommy standing in the adjoining living room in front of his brother (the infant plaintiff), with the gun in his hand. The brother was crying and when his mother, after picking him up, put him down on the bed, she observed that his eye was "all brown". She then took him to the hospital for treatment of his injury. He ultimately became blind in his right eye.

While there was no eyewitness testimony as to how the three-year-old had obtained the gun, the undisputed evidence

is that, along with other toys, it was kept in the sliding-door closet in the bedroom of Frank Gianotti, the 12-year-old defendant. Mrs. Gianotti testified that after the baby was injured, Tommy told her that he had entered Frank's bedroom, opened the closet door, taken the gun out, and had then gone back into the living room, where he cocked the gun and then fired it at his younger brother, hitting him in the eye. There was also undisputed testimony that Mrs. Gianotti, one of the defendants, had purchased the "BB gun", a Daisy 99 air rifle, for her son Frank as a present for his 12th birthday in August or September, 1969; that from time to time she bought him BBs for the gun; that he had played with it, but always away from the house; and that he kept it in his closet and, on occasions, under his bed.

Although Mrs. Gianotti testified that she knew of no prior occasions on which Tommy had taken Frank's gun, the latter testified that he had seen Tommy come into his room and go to his closet "looking for toys and stuff". Tommy had taken the gun out of Frank's closet on other occasions. When he did so, Frank took the gun away from him and either put it back in the closet, which was always closed, or under his bed. He also testified that he knew Tommy could cock the gun because when he had previously taken the gun from him, it was loaded and ready to be shot. Frank Gianotti also testified specifically as to one such occasion, about a month before the time of the shooting of the baby, when he saw Tommy in the hallway of the house with the gun and took it away from him. He testified further that his mother, one of the defendants, was in the house at that time. Finally, he testified that he had used the gun in the woods behind the house about two weeks or a month before the baby was shot in the eye and that he had then fired all of the BBs in the gun's magazine, although he added that the magazine could have had one BB left in it, which had gotten stuck. In any case, there is uncontradicted testimony by the two parental defendants and the infant claimant's mother that there was at least one BB in the gun at the time of the accident and that it was discharged when Tommy fired the gun at his brother in the living room on the morning of November 28, 1969.

### THE COURT'S CHARGE TO THE JURY

## A. Denial of Requested Charges

The plaintiffs requested two charges to the jury, both of

which were denied by the trial court. The first was that a parent is responsible for his failure to exercise reasonable care in allowing his child to have possession of an instrument which, in view of its nature and of the age and intelligence of the child, constitutes an unreasonable risk of harm to others, with reasonable care defined as that degree of care which a reasonably prudent parent would exercise under the same circumstances. The second was the plaintiffs' claim that the defendants had violated former subdivision 4 of section 265.05 of the Penal Law (which was essentially the same as the entirety of the present section 265.05) and subdivision 5 of section 265.10 of the Penal Law, and that if the jury were to find that to be so, and if the violations were a proximate cause of the injury to the infant plaintiff, then it must find the defendants negligent.

B. The Charge on Contributory Negligence

The trial court, in its charge to the jury, stated that plaintiffs "must be free from contributory negligence". It then went on to define that term, saying: "The plaintiff is required to exercise reasonable care for his own safety; that is the same degree of care that a reasonable person would have exercised for his own safety under the circumstances. The law does not permit you to weigh the degree of fault of the plaintiff and defendant, but requires that if you find that the plaintiff was guilty of any negligence, no matter how slight, whether it is one percent, one half of one percent, 90 percent, any percent at all, in that event a plaintiff cannot recover, even though you find the defendant negligent." The plaintiffs' attorney took exception to that portion of the charge, stating: "The plaintiff in this case was one and a half years of age at the time, and I submit to your Honor that at that age he is, as a matter of law, unable to understand danger, and he cannot be found negligent, nor can he be found contributorily negligent as a matter of law at the age of one and a half years."

The trial court then directed that the jury be returned to the courtroom and had plaintiffs' counsel state his request with respect to the contributory negligence charge in the jury's presence. Counsel repeated his request in substantially the same language, and the trial court then asked for comment by defense counsel, who said: "The jury must be charged that this does not mean that there was negligence on the part of the defendants, nor does that mean that the jury must not consider—or they should consider the plausibility, the credibil-

ity and the believability of the fact that the three-year-old child took the gun and did what they said he did. They must take all that into consideration, and the other part has nothing to do with it." The trial court then told the jury: "Well, an infant one and a half years old is what we call *non sui juris* because of the age, but you may consider the entire accident as to whether or not the defendants had anything to do with it. If the defendants did not have anything to do with it, then your verdict must be in favor of the defendants. If you feel that the defendants were negligent, predicated on the evidence, then you can say so by your verdict."

### THE APPLICABLE LAW

That a parent may be liable in negligence to a plaintiff injured by his or her infant offspring with a dangerous instrumentality, such as an air rifle or "BB gun" entrusted to the child by the parent, is well settled (see *Kuchlik v Feuer,* 239 App Div 338, affd 264 NY 542; *Lichtenthal v Gawoski,* 44 AD2d 771; *Lalomia v Bankers & Shippers Ins. Co.,* 35 AD2d 114, affd 31 NY2d 830 [in which our court held that a complaint in a negligence action alleging that a parent was guilty of negligence in placing a dangerous instrumentality in the possession and at the disposal of a 12-year-old boy, knowing it could be used in a dangerous manner, likely to cause harm to others, set forth a valid cause of action grounded in common-law negligence]; *Sullivan v O'Ryan,* 206 Misc 212). Clearly, therefore, if the immediate injury for which the infant plaintiff sues had been inflicted by his 12-year-old uncle, Frank, plaintiffs' right to the charge requested and denied, that a parent is responsible for his failure to exercise reasonable care in allowing his child to have a dangerous instrument, would have been clear, and should have been granted.

But here there was an intervening, possibly independent, causal factor, the action of three and one-half-year-old Tommy in taking the gun from the closed closet in his 12-year-old uncle's bedroom and then cocking it and firing it at his infant brother in the living room. The question is whether the defendant grandparents' action in providing their 12-year-old son with the "BB gun", and ammunition therefor, and in not insuring that his storage of it would be such as not to enable their three-year-old grandson to get it and use it, could be considered the proximate result of their negligence. Relevant,

in this connection, is the uncontradicted testimony of their son and codefendant (Frank) that on several occasions prior to the shooting which gave rise to the instant suit, he had known that Tommy had come into his room and had gone to his closet, taken the "BB gun" out and cocked it. There was also testimony by Frank to the effect that his mother had been in the house on at least one of the occasions when he had taken the "BB gun" away from Tommy. Yet all that he did on those prior occasions was to take the gun away from Tommy and either put it back in the closet or under his bed, instead of in a place where Tommy could not possibly get at it. Nor is there any claim that Frank's parents, the adult defendants, took any precautions to insure that the dangerous instrumentality which they had given their 12-year-old son was kept in a place in which their much younger grandchild, Tommy, could not get it. These facts indicate that the injury to John by Tommy was foreseeable by all the defendants, or at least that a jury could so find, and that, therefore, Frank's parents' negligence in providing him, a 12-year-old, with a "BB gun" and ammunition for it, and in failing to see to it that he was required to disarm it before putting it away, or to store it where their younger grandchild could not get at it, could be a proximate cause of the injury. In *Sherman v Concourse Realty Corp.* (47 AD2d 134, 139) this court said:

" 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.'

"In essence, *proximate cause* represents a policy decision by which it is determined how far removed an *effect* may be from its *cause in fact* for the actor nevertheless to be held legally responsible" (emphasis in original).

In *Sherman* our court also quoted with approval (pp 139-140) the following language of the Supreme Court of the United States in *Lillie v Thompson* (332 US 459, 462, revg 162 F2d 716): " 'That the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it. Breach of that duty would be negligence, and we cannot say as a matter of law that petitioner's injury did not result at least in part from such negligence.' "

It is therefore clear that the trial court committed prejudi-

cial error when it refused to charge the jury that a parent is responsible for his failure to exercise reasonable care in allowing his child to have possession of a dangerous instrumentality which constitutes an unreasonable risk of harm to others, with reasonable care defined as that degree of care which a reasonably provident parent would exercise under the same circumstances (cf. *Allstate Ins. Co. v Reliance Ins. Co.,* 85 Misc 2d 734).

Our conclusion that the trial court thus committed prejudicial error is reinforced by the line of authority culminating in *Patterson v Proctor Paint & Varnish Co.* (21 NY2d 447), which held that an owner of real property who maintains a dangerous instrumentality thereon is liable to infant trespassers who come upon his land and are injured by the dangerous instrumentality, even though the immediate cause of the injury may be some action by a third party. In *Patterson,* the dangerous instrumentality was an open pail full of a highly flammable, colorless fluid which was believed to be water by two infant trespassers, and which burned one of them, the plaintiff, when the other lit a fire and then poured the fluid on it in the belief that it was water (see, also, *Carradine v City of New York,* 13 NY2d 291; *Kingsland v Erie County Agric. Soc.,* 298 NY 409; *Collentine v City of New York,* 279 NY 119).

A further substantial error in the trial court's charge occurred in its handling of the instruction on contributory negligence. When it charged generally that the plaintiffs must establish that they were free from contributory negligence, without noting that the infant plaintiff, because of his age, could not be held to any such requirement, it committed substantial error. In *Korbel v Garrido* (26 AD2d 571, 572) this court, in reversing a judgment for the defendants on a jury verdict in a negligence action, held: "In our opinion, the court's repeated instructions to the jury that, in order to recover, plaintiffs were required to establish, *inter alia,* their freedom from contributory negligence, and the court's refusal to charge that, as a matter of law, plaintiffs were free of contributory negligence constituted prejudicial error requiring a new trial".

Here, the trial court, upon hearing the exception of plaintiffs' counsel to its charge that contributory negligence on the part of the plaintiffs would bar recovery because the infant plaintiff, at his age, could not be found negligent, declared that it would ask plaintiffs' counsel to repeat his request

before the jury. It thereupon had the jury called in and directed plaintiffs' counsel to make his request.* When he did so, the trial court asked defendants' counsel whether she wanted to say anything. Her response, before the jury, dealt not with the issue of contributory negligence, but with the "plausibility, the credibility and the believability of the fact that the three-year-old child took the gun and did what they said he did", and that the jury must take that into consideration. The court then made the above-quoted remark about an infant of one and one-half years being "what we call *non sui juris* because of the age". That statement did not suffice, for the court failed to explain that the phrase *"non sui juris"* meant that the infant plaintiff could not, as a matter of law, be guilty of contributory negligence; nor that, by reason thereof, the other plaintiff, the injured infant's father, who was not present when the infant was injured, was also not chargeable with contributory negligence (cf. *Fukae v Bishop,* 42 AD2d 895). Furthermore, the coupling of the undefined Latin phrase with the statement that the jury "may consider the entire accident as to whether or not the defendants had anything to do with it", merely served to further confound the jury by joining the question of contributory negligence with the question of proximate cause.

In addition to the foregoing, the trial court committed error when it permitted defense counsel to advise the jury that the sole reason for the lawsuit was because defendants were covered by insurance. The statements thus made by defense counsel were clearly calculated to convince the jury that the defendants were collaborating with the plaintiffs. Such a practice, in which defense counsel virtually accuses his own clients of perjury, cannot be countenanced. If defense counsel, on behalf of the insurance company, believed that to be the fact, the remedy was by disclaimer and not by disavowal of the clients she was called upon to represent.

The judgment appealed from should therefore be reversed and a new trial granted.

HOPKINS, Acting P. J., DAMIANI and TITONE, JJ., concur; COHALAN, J., dissents and votes to affirm the judgment.

Judgment of the Supreme Court, Queens County, entered

---

* We disapprove of such a procedure. If counsel's request to charge is correct, it should be delivered by the trial court without any indication as to which counsel requested it.

August 21, 1975, reversed, on the law, and new trial granted, with costs to abide the event. No contentions have been raised with regard to the facts.