728 P.2d 680

**Luther Duane WEBB, Plaintiff-Appellee Cross Appellant,**

v.

**Marjorie WEBB, dba Victor's Cocktail Lounge, Defendant-Appellant Cross Appellee.**

**No. 1 CA–CIV 7930.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 12, 1986.

Review Denied Nov. 18, 1986.

McCord & Howe by Harry L. Howe, Scottsdale, for plaintiff-appellee cross appellant.

Jones, Skelton & Hochuli by Edward G. Hochuli, Georgia A. Staton and Donald L. Myles, Jr., Phoenix, for defendant-appellant cross appellee.

GREER, Judge.

Plaintiff Luther Duane Webb (Luther) brought this negligence action against his aunt, defendant Marjorie Webb (Marjorie), dba Victor's Cocktail Lounge, for personal injuries he sustained in a fall from an unstable barstool at his aunt's cocktail lounge. Defendant Marjorie appeals from the trial court order granting plaintiff Luther's motion for new trial. Plaintiff cross-appeals, arguing a certain on-the-record statement made by defendant's counsel in seeking a trial continuance constituted a judicial admission. We find no abuse of discretion and affirm the new trial order.

BACKGROUND

The first proceeding ended in mistrial after plaintiff's counsel, during his opening remarks, informed the jury defendant's counsel had previously conceded the facts presented "virtually a clear case of liability" with "possible damages of $300,000." A statement to that effect had in fact been made to the court by defendant's counsel prior to trial in seeking a continuance. The statement is the subject of the cross-appeal and will be discussed at length below.

At the second trial, Marjorie was called to testify by plaintiff. She testified Luther had one drink and fell off the barstool while she was talking with him. She acknowledged having four or five barstools that were in constant need of repair. She further testified the stools posed a danger to her customers and were in need of replacement.

Marjorie was represented by counsel furnished to her by her liability insurance carrier under the provisions of her policy. Since Marjorie did not intend to deny her liability for Luther's injuries, her counsel decided to bring out the fact that she was insured. When Luther was called by defendant to testify, her counsel questioned him as follows:

Q. Mr. Webb, you love your Aunt Margie?

A. Yes, I do.

Q. Isn't it, in fact, true, Mr. Webb, that if it wasn't for the fact that your Aunt Margie had insurance in this case, and the insurance will pay any judgment that is awarded against her, that you wouldn't even be suing her?

Plaintiff objected to the latter question on grounds of relevancy and materiality. The trial court sustained the objection and en-

tertained further argument at the bench. Defendant's counsel argued that because his client "got on the stand and blew [him] out of the water," he was entitled to introduce evidence that she was covered by insurance to show bias and prejudice on the part of both plaintiff and defendant. Plaintiff continued to argue evidence of defendant's liability insurance was irrelevant. The court commented it was unusual for a defendant to bring up insurance, but allowed defendant's counsel to ask two questions of plaintiff regarding his client's insurance coverage:

Q. Mr. Webb, you are aware, sir, that your Aunt Margie had insurance on the bar?

A. Yes, sir.

Q. And you are aware, Mr. Webb, that a judgment—any judgment that you may receive in this case will be paid out of the insurance proceeds rather than out of your Aunt's pocket?

A. Yes, sir.

During closing argument, defendant's counsel told the jury the trial had been a stage play with family and friends being called to say just the right thing. He stated his own client, Marjorie, had been plaintiff's best witness, noting she testified she knew the stools were wobbly, dangerous, and could hurt someone. Defendant's counsel told the jury they were viewing "insurance fraud" in that the litigants were trying to "get the insurance company" because it had "lots of money" which would not be missed.[1]

The jury returned a verdict for defendant. Plaintiff moved for a new trial, arguing *inter alia* the trial court had erred in allowing defendant's counsel to question him regarding his knowledge of his aunt's liability insurance coverage and that admission of such evidence allowed defendant's counsel to inject the issue of insurance fraud into trial where the issue had not been properly raised and no evidence of

fraud had been presented. The trial court granted the motion. Reviewing its prior evidentiary ruling in light of defendant's subsequent use of insurance during closing argument, the court found the evidence of insurance should not have been admitted because its minimal probative value was outweighed by the danger of unfair prejudice. The trial court concluded plaintiff had been prejudiced because defendant's counsel used the insurance evidence in closing argument to suggest plaintiff and defendant had colluded to commit insurance fraud:

> The suggestion during closing argument of collusion or collaberation to commit insurance fraud leads this court to conclude that the verdict that was reached was as a result of passion or prejudice on the part of the jury, and not as a result of the merits of the evidence presented.

*See* Rule 59(a), Arizona Rules of Civil Procedure (ARCP).

## NEW TRIAL ORDER

On appeal, defendant argues that because the trial court's evidentiary ruling at trial was proper, the grant of plaintiff's new trial motion was an abuse of its discretion. We note the new trial order specified with particularity the ground on which the new trial was granted in accordance with Rule 59(m), ARCP. *See Reeves v. Markle,* 119 Ariz. 159, 579 P.2d 1382 (1978). Therefore, this court will not reverse the trial court's order absent a clear abuse of discretion. *Taylor v. Southern Pac. Transp. Co.,* 130 Ariz. 516, 521, 637 P.2d 726, 731 (1981). With this standard of review in mind, we proceed to consider the arguments raised on appeal.

Defendant's counsel contends he was entitled to introduce evidence of his client's liability insurance under Rule 411, Arizona Rules of Evidence, in order to show bias or prejudice on the part of the plaintiff in bringing suit. Ordinarily, the defendant is the party prejudiced by admission of insur-

---

1. We note plaintiff did not make a separate objection to defendant's use of insurance evidence in closing argument. Since defendant did not raise this issue until her reply brief, we do not consider whether plaintiff's failure to object constituted waiver of the objection. *Grant v. Arizona Public Serv. Co.,* 133 Ariz. 434, 444, 652 P.2d 507, 517 (1982).

ance evidence. In this case, however, the plaintiff was the party prejudiced by the defendant's introduction of such evidence. There are no Arizona cases addressing this precise situation.

■ Our research has revealed only one opinion outside this jurisdiction factually similar to the case at bar. In *Deschaine v. Deschaine*, 153 Me. 401, 140 A.2d 746 (1958), suit was brought by a mother against her son for personal injuries arising from an automobile accident. The jury returned a verdict in the son's favor. On appeal from the denial of a motion for new trial, plaintiff argued evidence of her son's insurance coverage had been improperly injected into the proceedings. Insurance had been brought into the trial in a statement made by defendant during plaintiff's cross-examination, during defendant's closing argument to the jury, and by the court when instructing the jury to disregard the fact the defendant was insured. Defendant's counsel used the evidence of insurance to enhance his client's credibility by suggesting to the jury that because his client was insured, he would have had no pecuniary interest in denying liability to his own mother. The *Deschaine* court applied the general rule that insurance in negligence cases is immaterial, prejudicial and therefore inadmissible:

> Insurance has no bearing on the issues in a negligence action and is prejudicial. Whether the fact enters the case through witnesses on examination by counsel for either side, or in argument, and whether it is introduced purposely and wilfully or inadvertently, is of no great importance if the evil to be prevented is present. The rule of exclusion is equally applicable to plaintiff and defendant.
>
> 'It (evidence of insurance) is evidence entirely irrelevant to the issues in this case, and there is as much impropriety in its introduction by a defendant as by a plaintiff.' *Skillin v. Skillin*, 130 Me. 223, 225, 154 A. 570, 571.

140 A.2d 746, 747. The court rejected as "unsound" the argument insurance evi-

dence should be admissible when it bears on a defendant's credibility:

> If argument of this nature is proper, it follows evidence of insurance is admissible. Could the purpose be limited to credibility of the insured? We think not.
>
> If the defendant may introduce insurance to bolster his credibility, the plaintiff may do likewise in attack. If insurance is admissible, so also must be the fact of no insurance, or the extent of coverage. Suppose A sues X (insured) and Y (not insured). On defendant's theory Y may show X is insured and that Y is not insured. Further, it may be that A is insured and that an insurance company is the real plaintiff in interest.

140 A.2d 746, 748. Defendant's attorney in this case similarly sought to use evidence of insurance to advance his cause. Instead of using insurance to accredit his client's testimony, he in effect used it to discredit her damaging testimony in an attempt to show bias and prejudice on the part of plaintiff in bringing the lawsuit. We think the reasoning of *Deschaine* is sound and in accordance with Arizona cases and statutes which protect defendants from prejudicial use of insurance evidence by plaintiffs.

Present Arizona case law holds that while the mere mention by plaintiff of defendant's insurance coverage during trial does not automatically require that a mistrial be ordered, such an order is appropriate where the issue is "injected into a case for a prejudicial purpose or ... its discussion is of such a nature as to be prejudicial." *Muehlebach v. Mercer Mortuary & Chapel, Inc.*, 93 Ariz. 60, 65, 378 P.2d 741, 744 (1963); *see also, Michael v. Cole*, 122 Ariz. 450, 595 P.2d 995 (1979); *E.L. Jones Constr. Co. v. Noland*, 105 Ariz. 446, 466 P.2d 740 (1970); Udall & Livermore, *Arizona Practice, Law of Evidence* § 91 (1982). Similarly, pursuant to Rule 403, Arizona Rules of Evidence, evidence of insurance introduced to show bias or prejudice of a party may be excluded by the trial court if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Thus, while the prejudice which

may arise in this type of case usually impacts on the defendant, we think Arizona rules and case law are broad enough to protect a plaintiff from unfair prejudice as well.

■ We have carefully reviewed the record in this case and find no abuse of discretion by the trial court. The trial court initially admitted the insurance evidence for the purpose of allowing defendant's counsel to reveal the potential bias and prejudice of the parties. The theory sought to be advanced by defendant's counsel presumably was that the testimony of both plaintiff and defendant should be considered by the jury in light of the fact that defendant would not be harmed and plaintiff would benefit by a judgment ultimately paid by the insurance company. However, we agree with the trial court's subsequent determination that evidence of insurance should not have been admitted because it was not relevant to the issues to be tried and was highly prejudicial. *Deschaine, supra.*

In closing argument, defendant's counsel told the jury that his own client and the plaintiff colluded or collaborated to commit insurance fraud. No evidence was presented at trial showing Marjorie's testimony was false or that the parties had colluded to commit insurance fraud. Plaintiff's knowledge that his aunt was insured, that any judgment in his favor would be paid for by her insurance company, and that his aunt gave damaging but true testimony is, standing alone, insufficient to draw an inference of collusion to commit insurance fraud. No extrinsic evidence was presented tending to show the aunt's testimony

was untrue or that she was an otherwise incredible witness. Absent evidence of fraud, insureds should not be subjected to a line of questioning from their own attorney suggesting that they are not telling the truth. An insured should be encouraged to testify truthfully though in many cases such honesty will lead to liability for their insurers. Finally, we note fraud was not pled nor listed in any pretrial statement as an issue to be tried in this case.

For all the foregoing reasons, we find the trial court did not abuse its discretion in granting a new trial on the grounds that injection of insurance was unfairly prejudicial to plaintiff and led to a verdict not based upon the evidence which was the result of passion or prejudice.[2]

## JUDICIAL ADMISSION

In his cross-appeal, plaintiff argues a statement made by opposing counsel to the trial court for the purpose of seeking a trial continuance should be treated as a judicial admission. Plaintiff contends he should have been allowed to bring the statement to the jury's attention at trial. A judicial admission has been defined as follows:

> An express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no proof to prove it, and the other is not allowed to disprove it.... It is, in truth, a substitute for evidence, in that it does away for the need of evidence.

---

2. We leave for another day the issue of any possible conflicts arising between the insured and his attorney where there is sufficient evidence of collaboration or collusion between the parties. This issue has not been briefed by the parties. However, we note the potential impropriety of such conduct by defense counsel. In *Masone v. Gianotti*, 54 A.D.2d 269, 277, 388 N.Y.S.2d 322, 327 (1976), the court stated:

> [T]he trial court committed error when it permitted defense counsel to advise the jury that the sole reason for the lawsuit was because defendants were covered by insurance.

The statements thus made by defense counsel were clearly calculated to convince the jury that the defendants were collaborating with the plaintiffs. Such a practice, in which defense counsel virtually accuses his own client of perjury, cannot be countenanced. If defense counsel, on behalf of the insurance company, believed that to be the fact, the remedy was by disclaimer and not by disavowal of the clients she was called upon to represent.

*See also Albinder v. Chrysler Corp.,* 79 A.D.2d 594, 433 N.Y.S.2d 511 (1980).

**466**

*Starkovich v. Noye,* 21 Ariz.App. 324, 326, 519 P.2d 77, 79 (1974), *vacated on other grounds,* 111 Ariz. 347, 529 P.2d 698 (1974), citing IX Wigmore, *Evidence,* § 2588 (3d ed. 1940).

■ In this case, defendant's counsel made the following statement to the court:

> We are put in a situation where we are going to trial on a case when there are possible damages of $300,000. It is virtually a clear case of liability. The whole case here is damages.

However, counsel further explained:

> My client is the cousin of the plaintiff. It is clearly a case, based on the discovery, where she is out to help the plaintiff as much as possible.

Defendant's counsel was simply attempting to express to the court his belief the probability of establishing non-liability was slight in view of the fact it appeared his client would not deny liability. Counsel was in no way conceding that his client was, in fact, liable. Use of this statement as proof that the defendant was liable would be improper. The trial court correctly concluded that the statement was not a judicial admission.

For the reasons set forth herein, we affirm.

MEYERSON, J., concurs.

KLEINSCHMIDT, Judge, specially concurring.

I concur in the opinion but see no need to leave for another day the issue of a possible conflict between the insured and his attorney. I think the issue was fairly raised by appellee's citation in his brief to *Albinder v. Chrysler Corp.,* 79 A.D.2d 594, 433 N.Y.S.2d 511 (1980), and *Masone v. Gianotti,* 54 A.D.2d 269, 388 N.Y.S.2d 322 (1976). An attorney's accusation that his client is committing fraud is destructive of the attorney-client relationship. Should it appear that an insured is wrongfully collaborating with the plaintiff the insurer should disclaim coverage. The attorney must not disavow the client. *See Albinder v. Chrys-*

*ler Corp., supra, Masone v. Gianotti, supra.*