Keith E. HACKER and Zetta Hacker *v*. Martha HALL

88-110                                759 S.W.2d 32

Supreme Court of Arkansas
Opinion delivered October 24, 1988

*Tatum & Sullivan, P.A.*, by: *Tom Tatum* and *Terry Sullivan*, for appellant.

*Huckabay, Munson, Rowlett and Tilley, P.A.*, by: *Beverly A. Rowlett*, for appellee.

DAVID NEWBERN, Justice. This is an automobile collision case in which the issue is whether counsel for Martha Hall, the appellee, made improper references to insurance coverage. We hold that he did and that a new trial should have been granted.

Martha Hall drove her car into the rear of a truck being driven by Keith E. Hacker who brought this action to recover for personal injuries sustained in the accident. Zetta Hacker, Keith's wife, joined as a plaintiff seeking damages for loss of consortium. Martha Hall did not contest liability. The Hackers' complaint sought $75,000 for permanent disability and loss of earning capacity incurred by Keith and $5,000 for Zetta's loss of

consortium. The jury awarded $3,811.96 for Keith's injuries and nothing for the loss claimed by Zetta.

Keith Hacker's medical bills totalling $7,623.92 were presented. Ms. Hall presented no evidence disputing their reasonableness or connection with the accident. The Hackers also presented evidence by a doctor's deposition that Keith had incurred a four percent permanently disabling injury to his neck. The deposition noted, however, that practically all of the tests administered to Keith Hacker showed no abnormalities.

Keith Hacker testified he lost his job at Burnham Ford, in whose employ he was driving the truck at the time of the accident, due to a personality change resulting from the accident and his subsequent inability to get along with customers. The only evidence presented by Ms. Hall was her own testimony having to do primarily with the minimal nature of the damage to the truck being driven by Hacker and the much greater damage to her car she said was caused by colliding with a bridge abutment which occurred apparently just after the collision, which caused only minor damage to the truck.

At the conclusion of the cross examination of Mr. Hacker, the following occurred:

BY MR. HUCKABAY [counsel for Ms. Hall]:

Q. Although you had no camera with you, how long was it after the accident that you employed Tatum and Sullivan [counsel for the Hackers]?

A. It was a couple of weeks.

. . .

Q. Why did you employ a lawyer so fast?

A. Because the insurance company kept harassing me.

Q. Which one?

A. State Farm.

Q. The one from State Farm or the one with Burnham?

A. No, State Farm.

Q. Oh, okay.

No objection was made by counsel for the Hackers to the questions elaborating on insurance coverage and expanding Mr. Hacker's reference by mentioning Burnham Ford's insurer.

During direct examination of Ms. Hall, the following occurred:

BY MR. HUCKABAY, (Cont'd)

. . .

Q. Now, you have insurance with State Farm, don't you?

A. I did have at that time.

Q. And you had Twenty-five Thousand Dollars ($25,000.00) worth of coverage, right?

A. Yes, sir.

Q. Anything above that, you have to pay for, right?

A. Right.

Counsel for the Hackers moved for a mistrial on the ground that it was improper for counsel to mention insurance coverage. The motion referred to both the questioning of Keith Hacker and the "intentional" reference during Ms. Hall's testimony. Mr. Huckabay argued that Keith Hacker was the first to mention insurance and that his questions were thus proper. The court stated that it was Mr. Huckabay's questions which had "opened the door" rather than Mr. Hacker's testimony. The court also offered to admonish the jury to disregard the testimony but commented that it probably would not do any good. Counsel for the Hackers agreed it would not help. The motion was taken under advisement and then renewed at the end of the trial in conjunction with the motion for a new trial. The new trial motion was based on the misconduct of counsel and inadequacy of damages. *See* Ark. R. Civ. P. 59(a)(2) and (5).

We agree with Ms. Hall's argument that a jury is not bound to award damages in the amount of the plaintiff's medical bills just because they are undisputed. Where the argument is only that the jury verdict was too small because the unrebutted

proof showed expenditures related to, and made necessary by, the defendant's negligence, and the trial court denies a new trial, we affirm absent a showing of a clear and manifest abuse of discretion. *Gilbert* v. *Diversified Graphics*, 286 Ark. 261, 691 S.W.2d 162 (1985); *Warner* v. *Liebhaber*, 281 Ark. 118, 661 S.W.2d 399 (1983). In this case, however, there is a specific argument as to the cause of the allegedly inadequate verdict, that is, the misconduct of Ms. Hall's counsel in mentioning insurance coverage. Rule 59(a)(2) provides for granting a new trial because of "misconduct of the jury or prevailing party." Misconduct of the "prevailing party" includes misconduct of the prevailing party's attorney. *City of Cleveland* v. *Peter Kiewit Sons Co.*, 624 F.2d 749 (6th Cir. 1980); *Brown* v. *Royalty*, 535 F.2d 1024 (8th Cir. 1976); 6A, J. Moore, J. Lucas, and G. Grothers, Jr., Moore's Federal Practice, § 59.08 [1], [2] (2d ed. 1987). *Cf. New Amsterdam Cas. Co.* v. *Harrington*, 274 F.2d 323 (5th Cir. 1960).

The mentioning of insurance in a case like this is forbidden unless it is relevant to an issue being tried. *Patton* v. *Williams*, 284 Ark. 187, 680 S.W.2d 707 (1984); *Vermillion* v. *Peterson*, 275 Ark. 367, 630 S.W.2d 30 (1982); *Pickard* v. *Stewart*, 253 Ark. 1063, 491 S.W.2d 46 (1973). In *York* v. *Young*, 271 Ark 266, 608 S.W.2d 20 (1980), we approved the introduction of insurance because the plaintiff was trying to use the rule against mentioning insurance as a shield to permit him to lie to the jury about his inability to pay expenses which had already been paid, but that was not the case here. When Mr. Hacker said, in response to cross examination, he sought counsel shortly after the accident because he was being harassed by the insurance company, Mr. Huckabay could have stopped there or gone on to something else. Instead, he asked "which one," thus implying that more than one insurer was involved. He then went even further and made it clear to the jury that an insurer for Mr. Hacker's former employer, Burnham Ford, might have been involved. That raised before the jury the spectre of Mr. Hacker seeking to be compensated both by Burnham Ford's insurer, possibly by way of workers' compensation benefits, as well as by Ms. Hall. We agree with the trial court's conclusion that it was these questions which "opened the door" to discussion of insurance rather than the testimony of Mr. Hacker. We also agree that

an admonition to the jury probably would not have cured the error. Where the reference to insurance is made intentionally, refusal of the court's offer to admonish the jury does not waive the error, *Pickard* v. *Stewart, supra.* Even if there had been a waiver of the error, we would still conclude a new trial should be granted due to the misconduct.

The rule against mentioning insurance when it is not relevant is well known in this state. We probably would conclude the questions we have just discussed constituted misconduct sufficient to have warranted a new trial, but we need not rest our decision on that incident alone.

■ There are very few cases in which the issue is whether a defendant should be permitted to testify about her own insurance coverage, but we conclude the issue presented is the same as when a plaintiff tries to introduce the defendant's insurance coverage. The question again is whether the question is relevant to an issue before the court or is designed to skew the jury's thinking because of the presence or absence of a deep pocket. When Mr. Huckabay asked Ms. Hall about her insurance coverage, that was just as irrelevant to any issue before the court as his questions pursuing the insurance issue with Mr. Hacker, and just as prejudicial. The questions of her could have had no purpose other than to taint the evidence and cause the jury to consider matters which should not have been before them.

■ The Hackers cite no authority holding specifically that a defendant may not testify with respect to her own insurance coverage. Probably it is a rare occurrence for a defendant to attempt to do so. *See Webb* v. *Webb,* 728 P.2d 680 (Ariz. App. 1986), where it was held it was proper for a trial court to grant a new trial where a defendant attempted to introduce her insurance in an attempt to demonstrate that the case against her was concocted to defraud the insurance company. In the portion of Ms. Hall's brief responding to the misconduct arguments of the Hackers, no mention is made of the questioning of Ms. Hall about her insurance. However, she argues in response to the contention that a mistrial should have been granted that it was permissible for counsel to inquire as to his own client's insurance coverage. No authority is cited for that statement, and we disagree with it. A defendant who states the relatively low limits of her insurance

policy in the face of a claim for more than that amount, whether or not, as in this case, in conjunction with testimony that she works three jobs and hauls wood on the weekends to support herself and her three year old child, injects an improper issue into the trial. Once liability is established or, as here, admitted, the only remaining question is the extent of the injury proximately caused by the negligence alleged rather than who will have to pay the award. It was misconduct to seek to establish Ms. Hall's insurance coverage in the absence of any issue to which it was relevant.

Reversed and remanded for a new trial.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. I dissent. The appellant, Mr. Hacker, gratuitously interjected the issue of insurance before the jury and opened the door for the appellee to explain the extent of coverage the appellant had. Once insurance was mentioned, the appellee had two choices: (1) move for a mistrial or (2) proceed with the questioning of Mr. Hacker (and later the appellee) in an attempt to minimize any prejudice the appellee may have suffered by the reference. Appellee chose the latter course.

Of course, Mr. Hacker's voluntary and unresponsive mention of insurance (and inference from it that appellee's insurance company had harassed Mr. Hacker) was not deemed objectionable by the Hackers' counsel. It was not until appellee testified concerning her insurance policy limits did counsel for the Hackers interpose an objection. I agree with appellee that the Hackers cannot have it both ways. If, by testimony, they reveal to the jury that the appellee has insurance, the Hackers are in no position later to complain when the appellee offers testimony in an attempt to explain (or minimize the impact of) that revelation. Thus, I would not reverse the trial court's refusal to grant the Hackers' motion for mistrial on this point.