MURPHY v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY.

Opinion delivered November 1, 1909.

1.  WITNESSES—IMPEACHMENT—FOUNDATION.—It is error to permit a witness to be impeached by proof of contradictory statements, without first laying a foundation by inquiring of him whether he made them. (Page 162.)

2.  EVIDENCE—ADMISSIONS OF ONE NOT IN PRIVITY.—In a suit by the administrator of a deceased person to recover damages on account of his killing for the benefit of his mother or his next of kin, it was error to permit the defendant to offer in evidence a written statement made by deceased in his lifetime to the effect that his mother was dead, as there was no privity between the next of kin and the deceased. (Page 162.)

3.  SAME—ADMISSIONS OF ATTORNEY.—Interrogatories prepared by plaintiff's counsel and submitted to defendant's counsel, but subsequently abandoned by plaintiff without being propounded to the intended witness, are not admissible, either as testimony or as admissions of plaintiff's counsel.  (Page 164.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; reversed.

*T. G. Malloy* and *Palmer Danaher,* for appellant.

Deceased did not assume the risk of dangers arising from failure of defendant to perform its duty.  48 Ark. 333; 70 Ark. 299.  The defense that deceased was drinking at the time of the injury cannot avail here, when not set up in the answer nor presented to the jury by instruction.  71 Ark. 427.  Verdicts must have evidence to support them, and juries are not justified in inferring, from mere possibilities, the existence of facts.  2 L. R. A. (N. S.), 908.  It is error to admit a complaint or answer to be read in evidence after the same has been withdrawn.  33 Ark. 251; 58 Ark. 491; Greenl. Ev. § 171.  A witness cannot be contradicted without first having laid the foundation therefor.  15 Ark. 359; 24 Ark. 620; 52 Ark. 303; 69 Ark. 648.

*Kinsworthy & Rhoton* and *James H. Stevenson,* for appellee.

The master's duty is performed when he uses due care and diligence to provide his employees with suitable and safe machinery with which to work.  44 Ark. 529.  When one enters the employment of another, he assumes all the hazards and risks or-

dinarily incident to the employment. 35 Ark. 613. The master only bound to exercise reasonable care and diligence to provide the servant with a safe place to work. 48 Ark. 333; 46 Ark. 555; 48 Ark. 460; 51 Ark. 467; 77 Ark. 1. The master is not required to use all means in his power to accomplish this end. 59 Ark. 98.

FRAUENTHAL, J. John H. Downey was a switchman in the employ of the St. Louis, Iron Mountain & Southern Railway Company, the defendant below, and on the night of November 18, 1907, he was killed in the yards of the defendant at Baring Cross, Arkansas, while engaged in the performance of the duties as such switchman. The administrator of his estate instituted this suit for the benefit of the next of kin of said decedent, who was his mother, Mrs. Katherine Downey; and in the complaint alleged that the death was due to negligence of the defendant. The defendant denied each allegation of the complaint, and claimed that the injury was due to deceased's contributory negligence, and that same was a part of the assumed risk of his employment.

The testimony on the part of the plaintiff tended to prove the following facts: A crew of four switchmen were engaged in pulling out of the track called "Rip 4" eighteen cars, and deceased was one of this crew. The engine was pulling the cars towards the switch where a number of tracks converged. The deceased was at the time on a box car which was the third car from the end, and a switchman named Sangster was on the rear car, and a switchman named Barnett was on the car next to the rear car of the train. Between the track called "Rip 4" and the track next to it, called "Rip 5," there was a trestle about seven or eight feet high, which was used in this yard by carpenters in the performance of their duties in repairing cars. This trestle was located in close proximity to this track 4. The deceased was on the top rounds of a ladder attached to the side of the box car, in readiness to go down this ladder to leave the car in performing his duties. On account of the proximity of the trestle to this track the deceased was struck by the trestle in the back as the train of cars was thus pulling out the track, and was knocked down and run over by the cars. The trestle and deceased were dragged along by the train of cars for a distance of 70 to 75 feet before the train was stopped. The plaintiff introduced as

witnesses in his behalf the switchmen, Sangster and Barnett, who testified in substance to the above as the manner in which Downey was injured.

The testimony on behalf of the defendant tended to prove that the said two switchmen and the deceased were drinking on this night of the injury, and that the two switchmen showed signs of drunkenness immediately after the occurrence. A number of witnesses testified to the circumstances and the condition of the ground next this track 4, indicating that no trestle was dragged along near this track, and that the deceased fell off the car at the place where he was found; that the only trestle at this portion of the yard was between tracks numbers 5 and 6, and that there was no trestle next or near the track number 4 upon which the deceased was working at the time of the injury; and the defendant contended that the deceased fell from the car without any fault or negligence on its part.

The jury returned a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff prosecutes this appeal.

Upon the trial of the cause the defendant introduced as a witness one W. T. Edwards, who testified in answer to questions propounded by defendant's attorney that he had had a conversation some time after the injury with the above witness of plaintiff, Sangster, and that said Sangster had stated that he did not know whether the deceased, Downey, fell off or was knocked off the car. The witness Sangster had not been asked whether he had had the above conversation with said Edwards, and no foundation was laid for the introduction of said testimony. The plaintiff duly objected to the introduction of this testimony, and duly saved his exceptions thereto. The purpose of the introduction of this testimony was to impeach the witness Sangster, by these alleged contradictory statements. Section 3139 of Kirby's Digest provides: "Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning the same with the circumstances of time and persons present, as correctly as the examining party can present them; and, if it is in writing, it must be shown to the witness, and he be allowed to explain it."

The direct tendency of the testimony of alleged contradictory statements made by the witness is to impeach his veracity; and it is but just to the witness and fair to the side introducing him that his attention be first called to these alleged statements, and the witness given an opportunity to recollect the facts and to explain the nature of what it is claimed he said and the meaning and design of the statements it is alleged he made. It may be that a word may have been imperfectly heard by the contradicting witness, or a word omitted or forgotten which might change the entire meaning of the alleged statement, or that an explanation might be made by him of the circumstances which would remove all seeming inconsistency in the statements; so that the witness would not be discredited by the jury. This rule of what is called laying a foundation by inquiring of the witness concerning the different statements alleged to have been made by him before introducing testimony as to such alleged contradictory statements is recognized in all but a few jurisdictions, and is enforced as an inflexible one. *Drennen* v. *Lindsey,* 15 Ark. 359; *Collins* v. *Mack,* 31 Ark. 694; *Griffith* v. *State,* 37 Ark. 324; *Carpenter* v. *State,* 62 Ark. 286; *Ayers* v. *Watson,* 132 U. S. 394; 2 Wigmore on Evidence, § 1028; 1 Greenleaf on Evidence (16th Ed.), § 462.

It was therefore erroneous to permit the introduction of this testimony; and under the circumstances of this case the error was prejudicial. The manner in which the deceased received the injury was the material issue in the case. The plaintiff contended that he was knocked off the ladder of the car by this trestle. The defendant claimed that he fell off the car. The witness Sangster was an eye witness, as he claimed, of the occurrence, and he was therefore a very important witness upon whose credibility rested the strength of plaintiff's cause. If, therefore, there was error in permitting the introduction of this testimony which tended to impeach his veracity, that error was prejudicial to the cause of the plaintiff. The plaintiff objected to the introduction of this testimony; the only ground of his objection was this failure to lay the foundation for the impeaching testimony, and therefore the objection was duly made and saved.

Upon the trial of the cause the defendant introduced in evidence a written application for employment signed by de-

ceased, which contained certain questions and answers, among which were the following:

"Name of mother (if dead, so state).  Dead."

"Name and. address of all persons to whose support I am contributing are as follows:  None."

This was permitted to be introduced in evidence over the objection of plaintiff duly saved.

· The only theory upon which this written statement could have been introduced was that it was an admission made by the deceased.  But an admission made by the deceased could not affect the rights of the plaintiff in this case.  Where an administrator claims property involved in a suit in the right of the decedent, the admissions of such decedent as to the title of such property are admissible because there is a mutual and successive relationship to the same rights of the property which constitutes a privity.  But there can be no such privity in the relationship between the plaintiff and the deceased to the cause of action in this case.  Upon the death of a person by a wrongful act of the railroad company two causes of action arise; one in favor of the administrator for the benefit of the estate; the other for the benefit of the next of kin; and the actions are prosecuted in different rights and damages are given upon different principles to compensate different injuries.  The action in favor of the next of kin is based on the theory that such next of kin has a pecuniary interest in the life of the person killed; and the amount of the recovery is limited to the value of that interest; and the administrator is but the trustee of such next of kin.  *Davis* v. *Railway,* 53 Ark. 117; *St. Louis, I. M. & S. Ry. Co.* v. *Sweet,* 63 Ark. 563; 4 Sutherland on Damages, § 1264.

The action for the benefit of the next of kin is therefore an action for an injury to the rights of the next of kin, and there could be no privity existing in those substantive rights of the next of kin between the deceased and the next of kin.  So that the admissions of the deceased would not be admissible in an 'action by the next of kin in such case.  1 Greenleaf on Evidence (16th Ed.), § 189; 2 Wigmore on Evidence, § 1081.

It was therefore error to permit the introduction of the written application signed by deceased.  And the introduction of that statement was prejudicial to the rights of the plaintiff.  The sole

ground upon which the plaintiff could recover in this case was the fact that the next of kin had suffered a pecuniary loss. But that pecuniary loss was based solely on the contributions which the deceased would make to the next of kin; and therefore founded on the contributions which he was making before his death. This statement tended to prove that he was making no contributions whatever to the next of kin for whose benefit solely this action was brought; and on that account it tended to prove that the plaintiff was not entitled to recover anything in this action, even if the death of decedent had been caused by the wrongful or negligent act of the defendant.

We are also of the opinion that the court committed an error in permitting the introduction in evidence of certain interrogatories which had been prepared by the attorney of the plaintiff to be propounded to Mrs. Braker. These interrogatories were turned over to the attorney of the defendant for the purpose of permitting him to append thereto cross interrogatories. Subsequently, the taking of the deposition of this witness upon these interrogatories was abandoned. The interrogatories were therefore never used in the case or filed. There is no testimony that they were inspired by the plaintiff. They were solely prepared by the attorney who, if he did not ask for their return, entirely abandoned them, and thus withdrew them. They could not be admissible on the theory that they were depositions taken by consent or that they were admissions of an attorney in the course of the progress of the cause; and there is no theory, in our opinion, upon which they were competent as testimony in the case. *Holland* v. *Rogers,* 33 Ark. 251; *Railway Company* v. *Clark,* 58 Ark. 493; *Ong Chair Co.* v. *Cook,* 85 Ark. 300; 1 Greenleaf on Evidence (16th Ed.), § 186.

On account of the errors committed by the lower court in admitting the introduction of the above testimony, the judgment is reversed, and this cause is remanded for a new trial.