Jon H. DODSON, M.D. *v.*
ALLSTATE INSURANCE COMPANY

00-456 47 S.W.3d 866

Supreme Court of Arkansas
Opinion delivered June 28, 2001

*David M. Hargis*, for appellant.

*Watts & Donovan, P.A.*, by: *Richard N. Watts*; and *Laser Law Firm*, by: *Brian A. Brown*, for appellee.

JIM HANNAH, Justice. Appellant Jon Dodson, M.D., appeals a Pulaski County jury's verdict finding in favor of Appellee Allstate Insurance Company on claims of defamation and tortious interference with a contract. This court accepted this case on March 9, 2001, pursuant to Ark. Sup. Ct. R. 1-2(g). Dodson raises ten points on appeal. We hold that the trial judge erred in ruling that Allstate's withdrawn counterclaim could not be used at trial as evidence that Allstate defamed or interfered with Dodson's contractual relationships with his patients. We reverse and remand.

*Facts*

On September 3, 1997, Dodson filed a complaint against Allstate and two of its agents in Arkansas, Bobbie Waddell and John Runkle, alleging that these employees, at Allstate's direction, defamed Dodson by representing to insureds and claimants that Dodson provided unqualified physical-therapy treatment at his

office and that this amounted to fraud. Dodson also complained that Allstate represented that he overcharged for treatment, and that his medical practice was illegal.[1] Dodson further alleged that these defamatory statements were made with an intent to damage his professional reputation. Allstate, Waddell, and Runkle answered on September 5, 1997, and they then filed a counterclaim on November 7, 1997. In the counterclaim, Allstate, Waddell, and Runkle alleged that Dodson did not employ state-licensed physical therapists at his clinic, that Dodson intended to deceive and defraud, that these acts violate the Arkansas Physical Therapy Act, that Dodson knowingly collected money for unlawful and unnecessary treatment, and that Dodson misrepresented to Allstate the treatment he provided to patients. Allstate further requested an accounting for the previous five years and sought punitive damages. Dodson moved to dismiss the counterclaim and filed his answer to the counterclaim on November 26, 1997.

On December 17, 1997, Dodson filed his first amended complaint in which he alleged a claim for civil conspiracy among the defendants wherein they targeted Dodson and others to put them out of business in order to increase their profits. Dodson alleged that these practices by the defendants were performed as unfair methods of competition, that Allstate attempted to induce claimants to forego their rights to due process to seek medical attention, and that Allstate set out on a course to destroy Dodson's reputation and business. Dodson further alleged specific acts performed by Waddell and Runkle in furtherance of these claims.

Over the course of the case, the parties filed various requests for discovery, admissions, and production of documents. The parties exchanged motions to compel, motions to deem admissions admitted, and motions to strike discovery answers. Due to the constant bickering among the parties, the trial court entered an order on December 14, 1998, noting that the parties agreed at a hearing to resolve discovery disputes among themselves without court intervention. However, because the parties could not resolve

---

[1] Dodson filed two previous complaints before filing the complaint that is the subject of this appeal. He first filed a complaint on August 3, 1994, seeking a declaratory judgment in Pulaski County Circuit Court that his employment of physical therapists that were not state licensed, but supervised by Dodson under his medical license was proper. On May 17, 1995, that case was dismissed by the court because a justiciable issue had not been raised. On July 14, 1995, a complaint for defamation and tortious interference with a contract was filed in Pulaski County Circuit Court. This action was dismissed by Dodson on August 1, 1996. This current action was then filed in 1997.

the issues themselves, the court ordered that certain of Dodson's answers to the defendants' requests for admissions be stricken with additional time to respond to six particular requests. The court ordered that the remainder of the defendants' requests to strike be denied. On Dodson's motion to compel, the trial court found that certain answers by the defendants were adequate, certain requests by Dodson were overly broad, and the court ordered that Allstate respond to certain requests on a limited basis, providing Arkansas materials only.

On December 30, 1998, Dodson filed a motion to reduce time for discovery responses, a motion for reconsideration of the trial court's rulings in its December 14, 1998, order on the motions to compel discovery, and a motion for order setting times and dates for depositions and procedures for authentication of evidence. The defendants responded on January 20, 1999. The defendants also filed a motion for a protective order or, in the alternative, a motion to quash Dodson's second set of interrogatories and requests for production arguing that they had nothing to do with the lawsuit and were merely asked as a "fishing expedition." Dodson responded on February 1, 1999, arguing that the defense had "stonewalled" discovery and had failed to produce any of the ordered discovery. Dodson further argued that the requested discovery was sought to highlight Allstate's continued practice of denying soft-tissue injury claims. In addition to these motions, both parties filed additional motions regarding discovery or lack thereof.

On April 5, 1999, Allstate, Waddell, and Runkle moved to dismiss their counterclaim, and the court granted this motion that same day. A week later, the parties agreed to a joint stipulation that documents contained in thirteen volumes of Allstate company manuals were authentic and comply with the rules for the admissibility of business records in Arkansas. However, the stipulation specifically noted that it remained an issue for the jury as to whether these records were used in the training of local employees.

The defendants filed a motion for summary judgment on April 16, 1999, arguing that Arkansas no longer recognized the tort of defamation per se, and Dodson must show actual damages, which he could not do. Furthermore, the defendants argued that any statements made by Waddell and Runkle that may have been defamatory were privileged, and that they took no improper action to interfere with Dodson's contractual relations. Dodson replied to the motion for summary judgment on April 22, 1999, and included responses, as well, to various other defense motions including a

motion *in limine* and motions to exclude certain witnesses. The trial court denied the defendants' motion for summary judgment on May 7, 1999, reset the trial for September 8, 1999, and ordered that no further pleadings, motions, or amendments would be permitted without leave of court and no additional discovery would be allowed. The court also "froze" the witness lists. On August 12, 1999, however, Dodson filed a second amended complaint restating his claims in the first amended complaint and increasing his claim for damages.

Trial began in this case on September 8, 1999, with jury *voir dire*. Over the course of the trial, each party presented numerous witnesses who testified regarding alleged representations made by Allstate and its agents, as well as the claims practices of Allstate. The defendants also presented evidence of the alleged lack of proper treatment and care by Dodson and his physical-therapy aides in support of the defense's theory that claims were properly denied because of inadequate treatment by Dodson. At the close of trial, prior to instructing the jury, Dodson dismissed his claims against Runkle and Waddell and proceeded only against Allstate. The trial court submitted the claims of defamation and tortious interference with a contractual relationship to the jury, and the jury found for Allstate. On September 24, 1999, the trial court entered its judgment reflecting the jury's decision. Dodson raises ten points on appeal.

## I. Judicial and Juror Misconduct

Dodson first argues on appeal that the trial court erred in denying his motion for new trial because there was judicial and juror misconduct that damaged his ability to present a fair case to the jury. This court has said that a decision on whether to grant or deny a motion for new trial lies within the sound discretion of the trial court. *State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354 (2000); *Miller v. State*, 328 Ark. 121, 942 S.W.2d 825 (1997). This court will reverse a trial court's order granting a motion for a new trial only if there is a manifest abuse of discretion. *Id.* A trial court's factual determination on a motion for a new trial will not be reversed unless clearly erroneous. *Clayton v. State*, 321 Ark. 602, 906 S.W.2d 290 (1995).

## A. Judicial Misconduct

Dodson argues that the trial judge was biased and hostile to his claims and that this "ultimately...determined the outcome of this litigation." Dodson argues that the trial judge's rulings on various discovery motions, his statements made during hearings and at trial, the court's denial of jury instructions proffered by Dodson, and the judge's alleged communications with a juror all served to prejudice Dodson.

 This argument is not preserved for review, as appellant did not object to any statements by the trial judge, nor did he move for the judge's recusal. *See Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998). While Dodson cites examples of what he believes are biased or harsh remarks on the part of the trial judge, the abstract is devoid of any objection or motion to recuse. As such, even though this matter was argued in the motion for new trial, it has been abandoned on appeal for failure to preserve the issue in a timely and proper manner.

## B. Juror Misconduct

Dodson also alleges in his motion for new trial and on appeal that one of the jurors who became the jury foreman engaged in improper *ex parte* communications with the judge, lied during *voir dire* about her profession and insurance experience, and demonstrated outward acts of disdain during Dodson's closing arguments.

 Jury misconduct is a basis for granting a new trial under Rule 59 (a)(2). *See Trimble v. State*, 316 Ark. 161, 871 S.W.2d 562 (1994); *Hacker v. Hall*, 296 Ark. 571, 759 S.W.2d 32 (1988). The decision whether to grant a new trial under Ark. R. Civ. P. 59 (a)(2) is discretionary with the trial judge who will not be reversed absent an abuse of that discretion. *Borden v. St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985). The burden of proof in establishing jury misconduct is on the moving party. *Id.* The moving party must show that the alleged misconduct prejudiced his chances for a fair trial and that he was unaware of this bias until after trial. *Owens v. State*, 300 Ark. 73, 777 S.W.2d 205 (1989); *Hendrix v. State*, 298 Ark. 568, 768 S.W.2d 546 (1989). We have held that the appellant bears the burden of demonstrating that a reasonable possibility of prejudice resulted from the alleged improper contact or

conduct. *See Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000); *Griffin v. State*, 322 Ark. 206, 909 S.W.2d 625 (1995).

Again, Dodson fails to show that the trial judge abused his discretion in denying the motion for new trial where Dodson's motion for new trial and supporting affidavits failed to indicate how Dodson was prejudiced by the juror's conduct. Certainly, Dodson offered affidavits from himself, his wife, and his daughter, along with an affidavit from his attorney, David Hargis, alleging that the juror generally acted with disdain during Hargis's closing argument. However, no evidence was submitted to indicate that these alleged antics had any influence over other jurors or the court. Furthermore, while Dodson alleges that this juror engaged in *ex parte* communications with the trial judge, again there is no evidence besides the affidavits that these contacts occurred or that they had any bearing on the other jurors's perceptions or decisions in this case. Apparently the juror in question in answering the juror's information sheet listed her occupation as a housewife. Dodson states they learned after the trial that the juror's family owned a business and that the juror was responsible for the family business's Arkansas Worker's Compensation self-insurance plan. However, during *voir dire*, in response to Dodson's question, the juror stated that she was married to a lawyer, she was a chair-person for a state chamber-of-commerce-related committee concerning workers' compensation, and that at a state legislature committee meeting a plaintiff's lawyer called her a "Nazi." Dodson did not question the juror any further, he did not challenge her for cause, and he did not strike her from the jury. The juror's response during *voir dire* was sufficient to cause Dodson to inquire further or at least to strike her from the jury. Dodson cannot maintain after the trial that he was prejudiced by this juror when he had sufficient information during voir dire to strike her from the jury. Basically, Dodson failed to supply any proof of prejudice from the alleged misconduct by the juror.

## II. Discovery

In his second point on appeal, Dodson argues that discovery abuses occurred when Allstate "stonewalled" the production of documents, sometimes failing to produce requested discovery at all, and the trial court did not compel Allstate to produce all of the requested documents but instead limited discovery to "Arkansas" materials. Allstate argues that the trial court did not abuse its discretion in refusing to require Allstate to produce certain documents

and that Dodson cannot show prejudice in not receiving this information.

Arkansas Rule of Civil Procedure 26 "General provisions governing discovery" states in pertinent part:

> (b) *Scope of Discovery.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

> (1) *In general.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues in the pending actions, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, identity and location of any books, documents, or other tangible things and the identity and location of persons who have knowledge of any discoverable matter or who will or may be called as a witness at the trial of any cause. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This court has long held that the trial court has wide discretion in matters pertaining to discovery and that a trial court's decision will not be reversed absent an abuse of discretion. *Parker v. Southern Farm Bureau Ins. Co.,* 326 Ark. 1073, 935 S.W.2d 556 (1996); *Stein v. Lukas,* 308 Ark. 74, 823 S.W.2d 832 (1992) (citing *Marrow v. State Farm Ins. Co.,* 264 Ark. 227, 570 S.W.2d 607 (1978)). Although this court recognizes the magnitude of the trial court's discretion in discovery matters, it has found an abuse of discretion where there has been an undue limitation of substantial rights of the appellant under the prevailing circumstances. *Rickett v. Hayes,* 251 Ark. 395, 473 S.W.2d 446 (1971). A motion for production of documents must be considered in the light of the particular circumstances which give rise to it, and the need of the movant for the information requested. *Marrow, supra.* In cases where the appellant is relegated to having to prove his claim by documents, papers, and letters kept by the appellee, the scope of discovery should be broader. *Id.* We consider this factor in deciding whether there has been an abuse of discretion in denying a discovery request. *Id.* The goal of discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. *Id.*

■ Permissible discovery necessarily revolves around the causes of actions alleged by the plaintiff, and from these causes of action the trial court must fashion its rulings on discovery. *See* Ark. R. Evid. 26. In this case, Dodson alleged three causes of action: libel, tortious interference with a contractual relationship, and civil conspiracy. Rule 26 notes that discovery that is relevant to these claims must be produced.

■ To understand the relevancy of requested discovery, one must understand the elements and nature of the causes of action alleged. First, the following elements must be proven to support a claim of defamation, whether it be by the spoken word (slander) or the written word (libel): (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997); *Mitchell v. Globe Int'l Pub., Inc.*, 773 F. Supp. 1235 (W.D. Ark. 1991). We held in the case of *United Ins. Co. of America v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998), that a plaintiff in a defamation case must prove reputational injury in order to recover damages. In *United Ins.*, the doctrine of presumed damages in a defamation per se case was abolished, and all prior inconsistent decisions were overruled. *See also, Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543 (1999). An action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Southall v. Little Rock Newspapers, Inc.*, 332 Ark. 123, 964 S.W.2d 187 (1998); *Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 954 S.W.2d 914 (1997); *Thomson Newspaper Publishing, Inc. v. Coody*, 320 Ark. 455, 896 S.W.2d 897, cert. denied, 116 S. Ct. 563 (1995).

■ ■ Next, the elements of tortious interference that must be proved are: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997); *Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997); *United Bilt Homes, Inc. v. Sampson*, 310 Ark. 47, 832 S.W.2d 502 (1992). Our law requires that the conduct of the defendants be at least "improper," and we look to factors in § 767 of the RESTATEMENT

(SECOND) OF TORTS for guidance about what is improper. *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 969 S.W.2d 160 (1998).[2]

Finally, in order to prove a civil conspiracy, Dodson must show a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another. *Mason v. Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969). Such a conspiracy is not actionable in and of itself, but recovery may be had for damages caused by acts committed pursuant to the conspiracy. *Id.* Civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong. 16 AM. JUR. 2d *Conspiracy* § 51 (1998). Since a corporate entity cannot conspire with itself, a civil conspiracy is not legally possible where a corporation and its alleged coconspirators are not separate entities, but, rather, stand in either a principal-agent or employer-employee relationship with the corporation. *Id.* at § 56. Corporate agents may not be held liable for civil conspiracy in the absence of evidence showing that they were acting for their own personal benefit rather than for the benefit of the corporation. *Id.* at § 68. The only proper party plaintiff in a civil conspiracy action is the person who has suffered damage. *Id.* at § 66.

Based on these foregoing elements to Dodson's causes of action, it is clear that because Waddell and Runkle were employees of Allstate presumably carrying out all directives by Allstate in the course of their employment, the civil conspiracy claim could not have survived even if Dodson had not voluntarily dismissed Waddell and Runkle from the case prior to its submission to the jury. And,

---

[2] To obtain a better understanding of the term "improperly," the court referred to the RESTATEMENT (SECOND) OF TORTS § 767 (1979), which states:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

the nature of the actor's conduct,

the actor's motive,

the interests of the other with which the actor's conduct interferes,

the interests sought to be advanced by the actor,

the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

the proximity or remoteness of the actor's conduct to the interference and

the relations between the parties.

*See Mason*, 333 Ark. at 14.

certainly, once these individuals were dismissed, the civil conspiracy claim necessarily had to fail because Allstate, as a corporation, could not conspire with itself. Therefore, this court must necessarily consider the trial court's decisions based on an abuse of discretion review under the two viable theories in the case: defamation and tortious interference with a contractual relationship.

██ Pursuant to these causes of action, we cannot say that the trial court abused its discretion in limiting discovery to Arkansas materials or failing to compel Allstate to produce nationwide documents because these two causes of action necessarily require a direct act against Dodson. Defamation, for example, requires that the defendants make specific slanderous or libelous publication directly against Dodson in order for those statements to be actionable. Tortious interference with a contractual relationship, as well, requires that the defendants know of the existence of a valid contractual relationship or a business expectancy and intentional interference inducing or causing a breach or termination of the relationship or expectancy. The requests for documents about which Dodson appears to complain do not, however, appear to provide information "which is relevant to the issues in the pending actions" or is "reasonably calculated to lead to the discovery of admissible evidence." For example, Dodson complains that he did not receive the "Do You Need a Lawyer" letter through discovery; however, he fails to show how this letter defamed him or interfered with his contractual relationships with his clients. In addition, Dodson argues that Allstate failed to produce the "scratch pads" used by Runkle and his office in claims in which Dodson was a treating physician. The abstract, however, contains evidence of these "scratch pads" used by Allstate in its evaluation of these claims. Dodson complains that the trial judge limited discovery to "Arkansas" materials; however, he fails to show how materials and matters employed by Allstate outside of Arkansas defamed him or interfered with his contractual relationship with his clients. This would be proper discovery if this were a class action, but it is not a class action. Instead, at the time of the trial court's rulings on discovery, it was a suit by Dodson against Allstate and two of its agents for defamation, tortious interference with his contractual relationship with his clients, and civil conspiracy. Overall, based on the viable claims presented by Dodson at trial, the rulings limiting discovery for the causes of action in this case did not amount to an abuse of discretion.

### III. The Counterclaim

In his third point on appeal, Dodson argues that the trial court erred in ruling that Allstate's withdrawn counterclaim could not be used at trial as evidence that Allstate defamed or interfered with Dodson's contractual relationships with his patients. Allstate responds that the trial court did not abuse its discretion in denying the use of this evidence because the counterclaim contained legal assertions and issues for the jury and did not comprise evidence of Allstate's position of the claims in the case. On appeal, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion. *O'Fallon v. O'Fallon,* 341 Ark. 138, 14 S.W.3d 506 (2000); *In re Estate of O'Donnell,* 304 Ark. 460, 803 S.W.2d 530 (1991). Nor will we reverse a trial court's ruling on evidentiary matters absent a showing of prejudice. *Jackson v. Buchman,* 338 Ark. 467, 996 S.W.2d 30 (1999); *Grummer v. Cummings,* 336 Ark. 447, 986 S.W.2d 91 (1999); *Edwards v. Stills,* 335 Ark. 470, 984 S.W.2d 366 (1998).

The case law on this issue has diverged over the years into two schools of thought. Some Arkansas cases hold that the admission of pleadings as evidence generally is not allowed as a party admission in a case. *See Sutter v. Payne,* 337 Ark. 330, 989 S.W.2d 887 (1999); *Tri-State Transit Co., Inc. v. Miller,* 188 Ark. 149, 65 S.W.2d 9 (1933); *Little Rock & Ft. Smith Ry. Co. v. Clark,* 58 Ark. 490, 25 S.W. 504 (1894). In these cases, this court noted that a withdrawn answer could not be introduced at trial as a party admission. In 1933, the *Miller* court provided a thorough discussion of the use of a party's pleadings as evidence in a case, stating:

> The only assignment of error which we deem to be well taken is the introduction in evidence, over appellant's objections, of its substituted answer hereinabove set out and which was withdrawn and replaced by the "second substituted answer," on which the case went to trial. Said answer was filed for a particular purpose, was in the nature of a demurrer and an offer of compromise. It admitted the allegations of the complaint for the purpose of contending that appellee was an employee and was subject to the Louisiana Workmen's Compensation Act. It offered to confess judgment for the maximum amount allowed under said act if he were an employee. Its introduction in evidence was manifestly prejudicial, if erroneously done, for the reason that it admitted to be true, "for the purpose of this answer," all the allegations of the complaint as to how the injury occurred. Said answer was not verified, but was

signed only by appellant's attorney. In the "second substituted answer," the previous answer was specifically withdrawn. Under such circumstances it was erroneous and prejudicial to admit in evidence the withdrawn answer. In *Railway Co. v. Clark*, 58 Ark. 490, 25 S.W. 504, this court held that it was error to permit the appellee to read the original answer of appellant as an admission after same had been withdrawn, and *Holland v. Rogers*, 33 Ark. 251, and other authorities were cited in support of the holding. This case was cited with approval in *Murphy v. St. L., I. M. & S. R. Co.*, 92 Ark. 159, 122 S.W. 636, where it was held, to quote a headnote, that: "Interrogatories prepared by plaintiff's counsel and submitted to defendant's counsel, but subsequently abandoned by plaintiff without being propounded to the intended witness, are not admissible, either as testimony or as admissions of plaintiff's counsel." The rule announced in *Railway Co. v. Clark* appears to be against the great weight of authority, for in 14 A.L.R. 65 it is stated: "With but few exceptions pleadings are admitted, other conditions being proper, against the pleader in the proceeding in which filed, * * * as evidence of admissions against interest therein contained." The exceptions there noted are California, Arkansas, Mississippi, Missouri, Washington and Nebraska. Our own case of *Holland v. Rogers* and *Railway Co. v. Clark, supra*, are cited in support of the minority rule. In *Valley Planting Co. v. Wise*, 93 Ark. 1, 123 S.W. 768, 26 L.R.A. (N.S.) 403, it is held that "a statement contained in a pleading filed by a party in another action between the same parties may be proved against him, but such admission is not conclusive and is subject to explanation." That referred to a pleading on which the case went to trial between the same parties in the other action. In *Taylor v. Evans*, 102 Ark. 640, 145 S.W. 564, where error was assigned for the refusal of the trial court to permit defendant to read in evidence the original complaint, and where plaintiff had testified that he did not know what allegations were made in the complaint, this court said: "The evidence being competent only for the purpose of showing an admission, or as establishing a contradictory statement of the plaintiff, it is not admissible, where it does not appear that the plaintiff knew of the allegations of the original complaint, or at least where it affirmatively appears that he was not aware of the contents of the complaint. It would be without probative force, either as an admission or as a contradictory statement, unless it was shown that plaintiff was aware of the contents of the paper." In the recent case of *Greer v. Davis*, 177 Ark. 55, 5 S.W.2d 742, it was held that defendant's answer is competent as an admission, whether verified or not. But this was an answer on which the case went to trial and was an answer filed by appellant pro se. It was his own pleading upon

which the case went to trial, signed by himself, and certainly was competent in the trial of that case. Here, however, as was the case in *Railway Co. v. Clark*, the pleading was withdrawn and a second substituted answer filed. It no longer remained a part of the record in the case, and was incompetent as evidence thereafter. The holding in *Railway Co. v. Clark*, may be a little too broad, for the authorities generally appear to hold that if a pleading is verified by the party in whose interest it is filed, it becomes a judicial admission and remains competent evidence where superseded by a substituted pleading.

*Miller*, 188 Ark. at 152–153. In *Missouri Pac. R.R. Co., Thompson v. Zolliecoffer*, 209 Ark. 559, 191 S.W.2d 587 (1946), this court again disallowed the introduction of a complaint filed by the defendant in a previous lawsuit because the defendant, who recovered in the previous lawsuit, had not verified, authorized, or adopted the pleading. However, the court noted that authority existed for introduction of such evidence "to prove an admission...and also for the purpose of impeaching him, to read the complaint in evidence, or to prove by him, on cross-examination, that he had made allegation in the original complaint inconsistent with his present contention." *Zolliecoffer*, 209 Ark. at 563.

More recently, this court has discussed the introduction of pleadings as evidence in a case. As noted in *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994), this court set out the evidentiary law regarding the admission of complaints in *Razorback Cab of Fort Smith, Inc. v. Lingo*, 304 Ark. 323, 325, 802 S.W.2d 444, 445 (1991), stating:

Over the objection of the defendants, the plaintiffs were permitted to introduce the complaint in evidence. Razorback charges the trial court with reversible error on this count and we sustain the argument. Complaints, normally phrased in the most partisan language, are in no conceivable sense evidentiary. That seems particularly true in a personal injury case, and one in which punitive damages are sought. The introduction of the complaint as an exhibit which the jury is told it should consider [AMI Civ. 3d 101(d)] and which it may take into the jury room, strikes us as arrant error.

While the cases bespeak no hard and fast rule, pleadings, and especially complaints, are generally treated as inadmissible. *Wright v. Hullett*, 245 Ark. 152, 431 S.W.2d 486 (1968) ("Statement or allegation in a pleading, such as a bill in equity, or a petition of

> complaint . . . is inadmissible in behalf of the pleader, in the action in which it is filed, against his opponent. . . ."); *State Farm Mutual Insurance Co. v. Cates*, 261 Ark. 129, 546 S.W.2d 423 (1977); *Fumiko Matsuuchi v. Security-First National Bank of Los Angeles*, 103 Cal.2d 214, 229 P.2d 376 (1951) ("Since when has an allegation in a pleading ever been regarded as evidence against an opposing party? The answer is never at all in the history of the law."); *Kroger Company v. Warren*, 410 S.W.2d 194 (Tex. Civ. App. 1966); *Abramsky v. Felderbaum*, 194 A.2d 501 (1963); *Toney v. Raines*, 224 Ark. 692, 275 S.W.2d 771 (1955).

*Greenlee*, 318 Ark. at 194-195 (quoting *Lingo*, 304 Ark. at 325). However, these cases cited here by the defendants all deal with a party attempting to admit its own pleading as evidence of the allegations contained therein and at trial. Here, however, Dodson attempted to submit the defendants' own counterclaim that they withdrew to show that at one time they alleged that Dodson was performing illegal and improper acts. There is some support for submission for this purpose in Arkansas law.

This court has allowed previous pleadings and transcripts to be admitted against opposing parties as evidence of prior inconsistent statements under Ark. R. Evid. 613. In *McDaniel v. State*, 291 Ark. 596, 726 S.W.2d 679 (1987), the court found that a transcript from a prior plea hearing was admissible to impeach the defendant in a Rule 37 proceeding. The court of appeals also allowed a complaint from a prior case to be used by the defendant as evidence to impeach the criminal complainant in *Jernigan v. State*, 38 Ark. App. 102, 828 S.W.2d 864 (1992). In *Jernigan*, the trial court allowed the defendant in a shooting case to impeach the complainant with a previous civil complaint she filed alleging that the shooting was accidental. In citing to *Lingo*, the court of appeals stated:

> The distinction between that case and this one is that in *Lingo* the plaintiff himself sought to introduce his own complaint as substantive evidence. In the case at bar, the defendant sought to impeach the prosecuting witness with the latter's complaint filed in a civil action. Under these circumstances the complaint qualifies as a prior inconsistent statement under Ark. R. Evid. 613. *See McDaniel v. State*, 291 Ark. 596, 726 S.W.2d 679 (1987).

■ This case falls more in line with *McDaniel* and *Jernigan* in that Dodson was not attempting to admit his own pleading to bolster his claims, but instead attempted to admit a filed and dismissed pleading adopted by all of the defendants. This pleading

clearly alleges that Dodson was performing illegal, fraudulent acts. As such, it qualifies for use as impeachment evidence to show that despite Allstate's stance at trial that it never asserted that Dodson had done anything wrong, Allstate's own pleadings indicated that they believed Dodson was acting fraudulently. The trial court abused its discretion and committed error in not allowing the defendants withdrawn counterclaim to be used as impeachment evidence.

### IV. Admission of Evidence of Results in Other Cases

In his fourth point on appeal, Dodson argues that the trial court erred in allowing the admission of evidence regarding results in other cases involving different parties where Dodson was the treating physician. The issue in the other cases was whether Dodson's medical treatment (the physical therapy) and his charges were reasonable and necessary. Dodson argues that although the trial court originally ordered that these "results" would not be admitted, the trial court then overruled Dodson's objection to cross-examination regarding those very results. He argues that it is basic law that a judgment entered in a case between different parties is inadmissible and is not binding on strangers to that case. Allstate responds that the very nature of this case requires evidence of the outcomes in other cases in which Dodson treated one of the parties. Allstate argues that admission of such evidence is discretionary with the trial court, and that Dodson opened the door to such evidence by calling witnesses who testified about Allstate's handling of their claims in cases where Dodson was the treating physician.

■■ In looking at the citations to the abstract noted by Dodson, although he argues in his brief that the trial court specifically excluded the evidence of the results in other cases, such is not the case. For example, Dodson cites the reader to page 193 of the abstract, where the trial court stated:

> THE COURT: All right. Let's do it this way. You can get in evidence that they have tried these and that they've got various results and they use that for the purpose of evaluating claims. By, the same token, you can't go in and say, now, look, Allstate, you tried ten of these and you lost nine of them, didn't you?
>
> MR. HARGIS: Wasn't planning to.

THE COURT: Okay. Now, that'll level that out.

MR. DONOVAN: Sounds good.

THE COURT: That way, both of you get to talk about it but you don't get into specifics which would not be correct.

The most obvious point in this discussion is that the trial court ruled that evidence of outcomes in prior trials could come in, and Dodson's attorney did not object to this ruling. In fact, he acquiesced, as did Allstate's attorney. However, now Dodson asks this court to find that there was error where his own witnesses testified that their settlement success rate decreased on cases where Dodson was the treating physician because of Allstate's allegedly injurious acts, but without showing that juries ruled in favor of Allstate at trial in those cases. The admission of evidence is at the discretion of the trial court, and this court will not reverse absent an abuse of that discretion or absent a showing of prejudice. *O'Fallon, supra; Jackson, supra.* Here, we hold that the trial court did not abuse its discretion in admitting this evidence. Furthermore, we hold that Dodson made no showing that he was prejudiced by evidence that he, himself, brought forth and to which he did not object upon the ruling by the trial court.

### *V. Allstate's Reliance on a Legal Opinion by Counsel*

In his fifth point on appeal, Dodson argues that the trial court erred in allowing witnesses to testify about a legal opinion secured by Allstate regarding Dodson's physical therapy clinic and its lawfulness under the Arkansas Physical Therapy Act. Dodson argues that he was "blind-sided" at trial by Allstate's defense of reliance on legal opinion, and that as an affirmative defense, Allstate should have pled it in the answer. Allstate replies that it did not submit this legal-opinion letter at trial, it did not rely on it as a defense, and the jury was never instructed that the legal-opinion was a defense to the defamation claim. However, when it came out in testimony that this legal opinion was obtained by Allstate, the trial court properly admitted the testimony because the evidence showed the defendants' motive and intent, and also showed that Dodson's opinion from the State Medical Board was controverted.

██ ██ Again, this is an issue regarding the admission of evidence, which is reviewed by this court under an abuse of discretion standard of review. *O'Fallon, supra.* Clearly, Allstate did not assert that it relied on a legal opinion as a defense to liability, and no instructions were given to the jury regarding such a defense. Instead, it appears that Allstate offered the evidence that it sought a legal opinion by counsel to counter the legal opinion obtained by Dodson from the State Medical Board regarding the legality of his physical-therapy practice. Just as in the previous issue, it appears that Dodson attempts to claim the benefit of obtaining a legal opinion, but does not want to allow Allstate to claim the same benefit with its own opinion. Again, under the circumstances, we cannot say that the trial court abused its discretion in admitting this evidence, and Dodson fails to show that he was prejudiced by the admission of this evidence. Furthermore, Dodson fails to offer any sufficient legal authority that such evidence necessarily must be admitted as an affirmative defense rather than as just another piece of evidence. This court will not consider the merits of an argument if the appellant fails to cite any convincing legal authority in support of that argument, and it is otherwise not apparent without further research that the argument is well taken. *Quachita Trek Development Company v. Rowe,* 341 Ark. 456, 17 S.W.3d 491 (2000); *Matthews v. Jefferson Hospital Ass'n,* 341 Ark. 5, 14 S.W.3d 482 (2000).

## VI. Exclusion of Sid McMath's Testimony

In his sixth point on appeal, Dodson argues that the trial court improperly excluded Sid McMath's testimony regarding a summary of Allstate's voluminous records submitted at trial. Allstate argues that the trial court did not err in excluding the testimony of McMath on various issues involving conclusions as to issues of law, matters not within his realm of expertise, and matters that had already been presented through various other witnesses.

While Dodson characterizes this as an exclusion of McMath's testimony, in actuality Dodson is arguing that the trial court erred in failing to admit the summary prepared by Attorney Hargis and adopted and verified by McMath. As Dodson's abstract reveals, the trial court, after hearing objections by the defense that McMath was not qualified as an expert on issues of insurance claims handling, overruled the objection and designated McMath as an expert in this area. As such, the trial court did not "exclude" McMath's testimony. However, when Hargis attempted to question McMath about a summary he and Hargis, prepared on over 6,000 pages of

documents in Allstate's claims manuals, the defense objected, arguing that the summary was hearsay because it was prepared by Hargis instead of McMath. McMath acknowledged that Hargis prepared the summary but that he, McMath, "verified" the summary and adopted it. The trial court, however, sustained the defense's objection as to hearsay and ruled that the summary could not be admitted into evidence and that McMath could not testify about its contents. The trial court noted that the over 6,000 pages of documents were part of the record and that the documents had already been testified about.

Again, admission of evidence is at the discretion of the trial court, and this court will not reverse absent an abuse of that discretion or absent a showing of prejudice. *O'Fallon, supra; Jackson, supra*. Rule 1006 of the Arkansas Rules of Evidence, which controls the admissibility of summaries, provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

As this rule indicates, the court "may" accept a summary, but is not bound to under the rule. This court has addressed Rule 1006 in two cases. In *Ward v. Gerald E. Prince, Const., Inc.*, 293 Ark. 59, 732 S.W.2d 163 (1987), the court upheld the trial court's acceptance of a summary of an accounting for construction costs offered by the construction company in its claim to recover costs for a project. On appeal, appellant claimed it was error to accept the summary. This court stated:

> Appellant argues that while no Arkansas case has addressed Rule 1006 as yet, other jurisdictions and Arkansas decisions rendered prior to the adoption of the rule support the conclusion that the original underlying documents of a summary must be (1) shown to be admissible and (2) made available in court in order to assure the accuracy of the summary and to allow for effective cross-examination. He further urges this court to adopt the procedure of our sister state, Missouri, which requires that, in order to introduce a summary of records, a party must give notice of such intention within a reasonable time prior to actual use of the summary. *See Union Electric Co. v. Mansion House Redevelopment Co.*, 494 S.W.2d 309 (Mo. 1973).

Rule 1006 does not require that a party notify an opposing party that he intends to introduce a summary. Instead, it merely mandates the originals, or duplicates, which are underlying documents of a summary, be made available for examination or copying or both, by other parties at a reasonable time and place. *See Square Liner 360-Degrees, Inc. v. Chisum*, 691 F.2d 362 (8th Cir. 1982). In addition, the rule allows the trial court discretion to order those documents be produced in court. Our court ordered production of such documents in *Mhoon v. State*, 277 Ark. 341, 642 S.W.2d 292 (1982). There, the trial court directed the state, during trial, to produce documents located in the Washington county collector's office, after permitting an auditor to testify concerning his summary of findings extracted from those documents. Although the trial court offered defendant's counsel a continuance to afford him an opportunity to examine the documents, counsel declined the offer. This court volunteered approval of the manner in which the trial court handled the matter.

*Ward*, 293 Ark. at 61. As noted in *Ward*, this court in *Mhoon v. State* also allowed an auditor to testify regarding his summary of documents from the Washington County collector's office. In these two cases, the preparer of the summary testified as to its contents. Here, however, McMath did not prepare the summary, but instead testified that he "verified" Hargis's summary against the original records. The trial court determined that this was hearsay evidence, that the documents had already been admitted into evidence, and, further, that Dodson's expert had already testified about the documents. We agree and hold that the trial court did not abuse its discretion in refusing to allow McMath to testify regarding the contents of a summary that he did not prepare himself as being cumulative and, further, that Dodson has not shown that he was prejudiced by the exclusion of the summary.

## VII. Non-physician's Testimony Regarding a Physician's Standards

In his next issue on appeal, Dodson argues that the trial court erred in allowing a Ph.D. in physical therapy, Dr. William Bandy, to testify regarding treatment provided by the therapists in Dr. Dodson's clinic. Dodson cites this court to several cases and a model jury instruction regarding who may testify regarding a doctor's treatment. The defense responds that Dodson opened the door to this line of questioning of Dr. Bandy because Dodson had testified that he, himself, trained his therapists and that the State Medical

Board sanctioned the use of unlicensed physical-therapy aides under the supervision of a doctor. The defense notes that Dr. Bandy did not evaluate or comment on Dodson's treatment modalities, but instead commented on the therapy aides's inadequate training and treatment of patients.

 Because this is an evidentiary issue, this court reviews the trial court's ruling for an abuse of discretion, and we hold that the trial court did not abuse its discretion in allowing Dr. Bandy to testify. In reading Dr. Bandy's testimony, it is clear that he was giving his opinion regarding whether the therapy aides lacked training and provided inadequate treatment of certain patients based on the records he reviewed, and that as an expert in physical therapy, he retained the requisite knowledge to render such an opinion on the physical therapy provided at Dodson's clinic. *See* Ark. R. Evid. 702. Allstate is correct that Dr. Bandy never commented on Dodson's ability or licensing to train physical-therapy aides. Instead, Dr. Bandy gave his opinion about the sufficiency of the patients's physical-therapy treatment rather than the medical treatment provided by Dodson.

*VIII. Use of Other Depositions Given by Dodson in Previous Cases*

In his next issue on appeal, Dodson argues that the trial court erred in allowing Allstate to read into the record testimony given by Dodson in depositions in prior legal cases

of his patients. Dodson objected that Allstate could not read into the record this testimony without the proper procedure, that being to allow Dodson to comment during cross-examination or impeachment regarding the deposition testimony. Allstate responds that Rule 32 of the Arkansas Rules of Civil Procedure allows the admission of this deposition testimony because Dodson is a party in the case.

 This issue revolves around the unclear language of Rule 32 and the purpose for which Allstate presented the deposition evidence. Rule 32 states in pertinent part:

(a) *Use of Depositions.* At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used

against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness or for any other purpose permitted by the Arkansas Rules of Evidence.

(2) The deposition of a party or of anyone who, at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party, may be used by an adverse party for any purpose.

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of a witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used. A deposition taken without leave of court pursuant to a notice under Rule 30(b)(2) shall not be used against a party who demonstrates that, when served with the notice, it was unable through the exercise of diligence to obtain counsel to represent it at the taking of the deposition; nor shall a deposition be used against a party who, having received less than 11 days notice of a deposition, has promptly upon receiving such notice filed a motion for a protective order under Rule 26(c)(2) requesting that the deposition not be held or be held at a different time or place and such motion is pending at the time the deposition is held.

(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced; and any party may introduce any other parts.

Under section (a)(1) of this rule, a party may use a witness's prior deposition testimony to impeach or contradict that witness's testimony in the present case. The rule does not limit the use of this rule to non-party witnesses, but presumably allows a party's deposition in a prior action to be used against him or her in a case in which that person is a party. Furthermore, Rule 613 of the Arkansas Rules of Evidence governs when a witness's prior statements can be used at trial against him. This rule states:

> (a) *Examining Witness Concerning Prior Statement.* In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

> (b) *Extrinsic Evidence of Prior Inconsistent Statement of Witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801 (d)(2).

According to this rule, when prior inconsistent statements are to be used by a party, the party must provide the witness an opportunity to respond. However, as noted in section (b), this rule does not apply to admissions by a party-opponent under Rule 801 (d)(2). Again, the admission of this evidence is subject to the trial court's discretion, and we find that the trial court did not abuse its discretion in allowing Allstate to read into evidence deposition testimony given previously by Dodson.

### IX & X. Alleged Errors in Jury Instructions Given and Refused at Trial

In his final points on appeal, Dodson raises alleged errors in the jury instructions given and refused by the trial court. He recites a list of instructions that were refused, pointing out why his instructions were preferable over those given to the jury, and then also notes that two instructions were given to the jury regarding "reasonable medical expenses" in personal injury cases. Allstate responds first by noting that Dodson's instructions refused by the trial court either contained erroneous statements of law or were unclear, and

that the trial court offered clearer and legally proper instructions instead. Allstate also argues that the instructions read by the court were proper statements of law applicable to the issues in this case.

This court has consistently held that a party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support the giving of the instruction. *Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997); *Yocum v. State*, 325 Ark. 180, 925 S.W.2d 385 (1996); *Parker v. Holder*, 315 Ark. 307, 867 S.W.2d 436 (1993). However, we will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Coca-Cola Bottling Co., supra.* Furthermore, it is not error for the trial court to refuse a proffered jury instruction when the stated matter is correctly covered by other instructions. *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997).

In his argument, Dodson acknowledges that the first instruction on multiple claims contained an explanatory provision that was rejected by the court. However, as Allstate notes, the standard instructions on this issue were given, and the court explained to the jury the provision Dodson attempted to include in his proffered instruction. On Dodson's defamation instructions, his proposed initial instruction contained language regarding defamation per se, which, as Allstate notes, was abolished in *United Ins. Co. of America v. Murphy, supra.* As such, that instruction was an improper statement of the law. Furthermore, Dodson's instruction on privilege was not as clear as that offered by the trial court, a fact admitted by Dodson at the instruction hearing. Therefore, we cannot say that the trial court abused its discretion in using different instructions than those proffered by Dodson. On the last refused instruction, it is unclear from the record whether Dodson waived this instruction or whether he objected to it. Furthermore, despite Dodson's argument that this instruction was not submitted to the jury, in actuality a modified version was submitted, and the jury was instructed on most of the provisions in the instruction.

Finally, Dodson objected to two instructions offered by Allstate that instructed the jury about reasonable and necessary medical expenses in personal-injury cases, and that the jury in those cases decides whether such expenses are reasonable and necessary. The trial court read these instructions to the jury over Dodson's objections that using these instructions resulted in the trial court adopting Allstate's theory of the case. However, Dodson's argument cannot be considered by this court because Dodson fails to offer any

legal authority to support his argument. We have stated on numerous occasions that we will not consider the merits of an argument if the appellant fails to cite any convincing legal authority in support of that argument, and it is otherwise not apparent without further research that the argument is well taken. *Matthews v. Jefferson Hospital Ass'n, supra.*

 On the merits, the Arkansas Rules of Civil Procedure set out the requirement for properly preserving a jury-instruction objection on appeal as follows:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection, and no party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue.

Ark. R. Civ. P. 51. Under this rule, any objections must be made before or at the time the instructions are given. *Fisher v. Valco Farms,* 328 Ark. 741, 945 S.W.2d 369 (1997). While Dodson timely objected to the giving of these instructions, the objection had no basis for support. Rather, part of Allstate's defense was the reasonableness of medical treatment provided by Dodson, and these instructions addressed that issue. Again, a party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support the giving of the instruction. *Coca-Cola Bottling Co., supra; Yocum, supra; Parker, supra.* We hold that the trial court did not abuse its discretion in giving these instructions.

Reversed and remanded.

JAMES PHILLIPS, SPL. J., joins.

MIKE KINARD, SPL. J., and THORNTON, J., concur in part and dissent in part.

GLAZE and IMBER, JJ., not participating.

MIKE KINARD, Special Justice, concurring in part; dissenting in part. While I concur with the majority opinion on all other points on appeal, I must respectfully dissent with the majority's disposition of the sixth point on appeal. Thus, I write only to say that I believe it was error for the trial court to disallow

Sid McMath's testimony concerning a summary of 6,000 pages of records that had been introduced and received into evidence.

As a witness, Mr. McMath was accepted as an expert and the trial court allowed him to testify about the 6,000 pages of records, denying him only the right to utilize the summaries he had acknowledged and adopted. I believe that this was error for several reasons.

First, not allowing Mr. McMath's testimony violates the purpose of Rule 1006 of the Arkansas Rules of Evidence. Rule 1006 controls the admissibility of summaries. The purpose of Rule 1006 is to allow the trier of facts to better understand the admissible evidence otherwise made available to the court. *Ward v. Gerald E. Prince Construction, Inc.*, 293 Ark. 59, 732 S.W.2d 163 (1987). The requirements of *Ward* were met when the 6,000 pages of business records had been made a part of the record before the jury and testimony had been allowed regarding their contents.

Second, an expert may rely on facts and data made known to him at or before the trial. Rule 703 of the Arkansas Rules of Evidence in relevant part states:

> The facts on data in the particular case upon which an expert bases an opinion or inference may be those perceived by *or made known to him at or before* the hearing

*Id.* (emphasis added). We have held that the lack of personal knowledge does not require exclusion of the testimony, it merely presents a jury question as to the weight of the testimony. *Scott v. State*, 318 Ark. 747, 888 S.W.2d 628 (1994); *see also Ark. Highway Comm. v. Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985).

Finally, the trial court has broad discretion in determining whether summaries should be admitted. However, the trial court in exercising this discretion should remain mindful of the fact that there is no requirement in the rule that it be impossible to examine underlying records before summaries may be used and the requirement for the rule to apply is that underlying "writings" be "voluminous" and that in-court examination not be convenient. *United Sates v. Scales*, 594 F.2d 558 (S.D. Ohio 1979).

In the case now before us, the jury was presented 6,000 pages of documents and the trial court allowed testimony regarding their contents. Mr. McMath was eminently qualified and appropriately

grounded in the summaries and he could have provided the jury assistance in understanding the evidence. Additionally, we note that if Mr. McMath had been permitted to testify his testimony would have been subjected to cross examination, and his opinions would have been subjected to the jury's evaluation as to validity and credibility. Considering the voluminous and technical nature of the documents, the jury's ability to examine and appreciate the evidence was throughly hampered without Mr. McMath's testimony. Thus, I would hold that to withhold Mr. McMath's testimony constituted an abuse of discretion. Accordingly, I would reverse the trial court on this point and I would remand with instructions to allow Mr. McMath to testify about the contents of the summaries.

I am authorized to state that Justice THORNTON joins in this opinion.